HOPSON v. HELLUMS.

Opinion delivered June 2, 1913.

1. DRAINAGE DISTRICTS—CONSTRUCTION AND SALE OF BONDS.—The act of 1909, page 829, which provides for the organization of a drainage district, the issuance of bonds, and the constructions of the drain, and that in order to hasten the work, the commissioners may borrow money and issue bonds therefor, or take up the estimates of the work done by the contractors by issuing them negotiable evidences of debt (§ 15), does not contemplate that there should be but a single bid which would dispose of both the bonds and the work, and a single contract let by the commissioners, in that manner is made without authority. (Page 464.)

2. DRAINAGE DISTRICTS—SALE OF BONDS.—Act of 1909, page 841, § 15, authorizing the commissioners to borrow money by issuing bonds, to meet the expenses of the work, does not prohibit the contractor doing the work from purchasing the bonds, but it does prohibit the commissioners from selling and delivering bonds to the contractor in payment for his work done, in advance. (Page 466.)

Appeal from Jefferson Chancery Court; *John M. Elliott*, Chancellor; reversed.

*A. H. Rowell*, for appellant.

The bonds are void because they were issued without a petition from the land owners asking that they be issued. Act No. 150, Acts 1913. It is necessary for the commissioners to comply with this act before they issue any bonds. There was no delivery of the bonds.

It is essential to the sale of a chattel that there be a meeting of minds and agreement of both parties to the sale and purchase, and title does not pass so long as something remains to be done between purchaser and seller. 90 Ark. 131; 95 Ark. 421.

This is not a question of vested rights. A vested right must be something more than a mere expectation based upon the anticipated continuance of existing laws. It must have become a title. Black, Constitutional Law, 430.

*Rose, Hemingway, Cantrell & Loughborough*, for appellee.

1. The act relied on by appellant can not invalidate bonds lawfully issued prior to the passage of the

act, and this is true even though the commissioners may have had knowledge that the act in question was pending in the Legislature at the time the bonds were issued. 2 Ark. 279; 29 Ark. 110; 30 Ark. 493; 31 Ark. 711; 94 U. S. 429; 57 N. J. L. 298; 26 Am. & Eng. Enc. of L. 565; 36 Cyc. 1191.

2. The act is void as impairing the obligations of both the contract between the district and Hahn & Carter and the contract between the latter firm and Hoehler & Cummings, for the sale of the bonds. 28 Ark. 555; 33 Ark. 691; 40 Ark. 424; 47 Ark. 515; 6 Enc. U. S. Sup. Court Rep. 768; *Id.* 835, 845.

SMITH, J. Appellant was the plaintiff below, and alleged in his complaint that he was the owner of a large amount of land situated within the limits of the Kirsh Lake Drainage District, which had been assessed for the purpose of making the improvement therein contemplated. The suit was brought against the commissioners of the drainage district, as such, and against Edgar J. Hahn and W. B. Carter, partners, doing business under the firm name of Hahn & Carter and the Bank of Pine Bluff. In his complaint, appellant alleged substantially the following facts: That on the 31st of October, 1912, the commissioners of the drainage district had on that day entered into a contract with the said Hahn & Carter for the construction of a main canal and laterals of the Kirsh Lake Drainage District, and their contract was reduced to writing and contained the following provisions: "Section 3. And the said Hahn & Carter, parties of the second part, further agreeing and offering as a part of their bid, which is to be taken as a whole and not separate from their bid to do the construction of said canal, to accept in lieu of cash for work on their contract, the entire issue of bonds of said drainage district, and to pay to the legal custodian of the funds of said drainage district in full par value for the within issue of bonds." The payments were to be made as follows: $25,000 as soon as the commissioners of the district had, in accordance with the law, executed said bonds

with the approved opinion of some bond attorney, whose opinion is authority on that question, and not less than $10,000 each month thereafter until all of said bonds are paid for in full.

In pursuance of said contract, the said board on the 11th day of February, 1913, passed a resolution, authorizing the issuance of $135,000 of bonds, but they were not issued until later. It was further alleged that in the meantime the inhabitants of said district had become dissatisfied with said contract and secured the passage of an act of the General Assembly of the State of Arkansas, which became a law on the 8th of March, 1913, which provided that thereafter it should be unlawful for the commissioners of the drainage district to issue any bonds whatever, without first being petitioned by the majority of the land owners, and also a majority in acreage and in value, asking that bonds be issued and further provided that all bonds issued without such petition should be void as against the district. Plaintiff further alleged that while said act was pending before the General Assembly, the defendants with knowledge of its pendency, and great probability of its ultimate passage, and in order to defeat the purpose of the said act, the said board on the 1st day of March, 1913, issued its bonds to the amount of $135,000 in pursuance of the resolution passed by it on that day. This resolution provided that the attorney of the board be instructed to deliver the 135 bonds of $1,000 denomination each to the Bank of Pine Bluff, Ark., as trustee for the account of E. J. Hahn, the contractor, under his contract with the board; and the said bank, being a depository of the funds of the said district, was authorized and instructed to send said bonds to the purchaser from the contractor, E. J. Hahn, and receive payment therefor, and the funds derived from the sale of said bonds were to be deposited one-half in the Bank of Pine Bluff and the other half in the Simmons National Bank, also of that city, to the credit of the drainage district. That said bonds were immediately delivered to the Bank of Pine Bluff, which, for

the purpose of aiding said Hahn & Carter in defeating the legislative intent, shipped the same beyond the limits of the State of Arkansas to the National Bank of Commerce of St. Louis, Mo., which holds them subject to its order.

Plaintiff alleged that the said contract with Hahn & Carter was beyond the power of the board, and that the issue of said bonds was wrongful, and he prayed that the said board and the Bank of Pine Bluff be required to recall said bonds and to cancel them. And he further alleged that if said bonds are cancelled, the said board, unless restrained, will proceed to issue its certificates or warrants to the said Hahn & Carter in payment for work done by them as contractors; and that said certificates or warrants will have all the effect of the bonds aforesaid, and the passage of said act of March 8 will be of no avail. And the plaintiff therefore prayed that said commissioners be restrained from issuing any warrants or certificates in payment for said work; and that they be restrained from selling or disposing of said bonds; and that the contract with the said Hahn & Carter be set aside and held for naught.

The commissioners filed an answer, six lines in length, in which they denied that they had exceeded their power in issuing the bonds, or that they had any power to recall them; and they demurred to the complaint for the reason that it did not state a cause of action.

Hahn & Carter answered and denied that their contract was invalid, but said that said bonds were duly issued in pursuance of said contract; and that before the issuance of said bonds they had entered into a binding contract with Hoehler & Cummings, bond dealers, of Toledo, Ohio, to sell them said bonds, and alleged that if they are not allowed to deliver them under said contract they will be liable to the purchaser thereof for damages; and they say that the said act of March 8, 1913, is an attempt on the part of the General Assembly to impair the obligations of the contract between them and the drainage district, and of the contract between

them, and the said Hoehler & Cummings; and they denied that said bonds are held subject to their order, or that the same would be returned to them on their demand, but say that the same would not be returned without the assent of Hoehler & Cummings, who will refuse to agree thereto, and who insist on their rights under the contract aforesaid. They demurred to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action.

The Bank of Pine Bluff answered and denied that the bonds were held subject to their order, but say that they shipped them to the National Bank of Commerce of St. Louis, Mo., which holds the same for the benefit of whomsoever may be entitled thereto, and stated that they have information that the firm of Hoehler & Cummings claim the ownership of said bonds under a contract with said Hahn & Carter; and that said bank would not send said bonds back without the assent of said Hoehler & Cummings, which can not be obtained, and they, too, demurred to the complaint, because it did not state facts sufficient to constitute a cause of action. The plaintiff demurred to the several answers, because he says none of them state facts sufficient to constitute a defense; and the cause was heard on these demurrers, and the court sustained the demurrer to the complaint and overruled the demurrer to the answers, and upon plaintiff's refusal to plead further, having elected to stand on his demurrer, his complaint was dismissed for the want of equity and he prosecuted this appeal from that order.

It is insisted that the act of the Legislature and the order of the court operated to impair the obligation of the contract for the sale of these bonds; and that Hoehler & Cummings should not, therefore, be required to surrender them up for cancellation and that they will not do so because they contracted to purchase them from Hahn & Carter, before the passage of said act.

Plaintiff attacks the entire contract, and says that it was entered into by the commissioners without author-

ity, and we think his position is well taken. This entire proceeding was had under Act 279 of the Acts of 1909, but this act did not contemplate that there should be a single bid which would dispose of both the work and the bonds, as was done here, but that these should be separate acts upon the part of the commissioners. The letting of the contract to do the work contemplated the clearing of the right-of-way, and the digging of the canal and lateral ditches; and a sale of bonds was one means provided for the raising of money to pay for the improvement. Some might desire to bid on the work, who would not be able to handle a bond issue, and some bond buyers might not want their purchase of bonds hampered with the contractor's obligation to construct the improvement, and Hoehler & Cummings are not assuming to do that work here. To make a single offering of the two propositions might require the contractor to place a discount on the bonds, to insure their disposal without loss, or such arrangement might induce the bond buyer to place a high figure on the cost of the improvement, in order that he might be safe in subletting the work. But, however that may be, these commissioners can exercise only the authority conferred upon them and must proceed in the manner pointed out in the act, under which their district was organized. Abbott on Public Securities, § § 46 and 48; *Morrilton Waterworks Improvement District* v. *Earl,* 71 Ark. 4; *Watkins* v. *Griffith,* 59 Ark. 344. Section 13 of this act, No. 279 of the Acts of 1909, provides that no work exceeding one thousand dollars in cost shall be let without public advertisement, and the thousand dollars of course means money and not bonds, which might be worth more or less than their face value.

Section 15 of this act provides that to hasten the work, the commissioners may borrow money at a rate of interest not exceeding 6 per cent, and issue bonds therefor, or they may, when it is so agreed, take up the estimates of work done by the contractors by issuing them negotiable evidences of debt, bearing interest at

not exceeding 6 per cent. If the bonds are issued, a fund is provided, which can be used for paying cash for the work as it progresses. If money is not raised by issuing bonds, then the contractor must take these negotiable evidences of debt for his work, and finally receive his money when the district has collected its revenue. Here the contract between the district and the contractors expressly stated that the proposition of the contractors is not a divisible one, and it must all, therefore, stand or fall together, and, for the reason which we have stated, we think the contract entered into was not one which the directors were authorized to make, and the decree of the court below is therefore reversed and the cause remanded with directions to overrule the demurrers to the complaint, and to sustain the demurrer to the answer, and for further proceedings in accordance with the law as here declared.

SMITH, J., (on rehearing). It is insisted in the motion for rehearing that the case was decided upon a point not briefed by either side, towit: that the contract had been let upon a bid based upon an offer to accept bonds in payment for the work. It is true that this point was not presented in the briefs, but it was presented by the pleadings in the case. We were asked to decide the effect of the special act of the General Assembly, set out in the original opinion, upon the validity of the bonds which had been issued by the commissioners, the cancellation of which was asked in the complaint. Under the allegations of the complaint, as explained by the exhibits, it appeared that the contract for the construction of the canal was a voidable one, and our decision to that effect was decisive of the case, and accordingly no other question was discussed in the opinion. It is now alleged in the motion for rehearing that the recital of the contract, which controlled our decision, is an erroneous one, and the fact is alleged and conceded that the contract was let upon a money basis, upon which there was competitive bidding for the work. We think our decision that there must be a common basis upon

which all bidders may compete, and that basis must be a money basis, is correct and we reaffirm it, and under the facts of this record, as we understand them to be, judgment could be rendered upon the pleadings; but, as the cause has been remanded, the parties may amend their pleadings to present such issues as are actually within the existing facts.

It is strenuously urged that we are in error in our interpretation of this drainage law, in that we have placed limitations upon the discretion of the commissioners which are not placed there by the drainage act, under which they had proceeded. We recognize the principle, well established by our own decisions, as well as by those of other courts, that where a discretion is imposed by the law in the discharge of duties, such as those exercised by the drainage commissioners, that that discretion is to be exercised by the executive officer, who has the function to perform, and the duty to discharge, rather than by the court which reviews their action. *Cherry* v. *Bowman,* 152 S. W. 133, 106 Ark. 39. There is nothing in our opinion, nor is there anything in the act, under which these commissioners were proceeding, which forbids the sale of their bonds privately, nor does the act require that they be sold at par. Neither does the law prohibit the commissioners, after the contract has been let, from making the sale of the bonds to the contractor, who is constructing the improvement. The issuance of bonds is authorized to furnish means for anticipating the collection of the revenues, and this money can be realized by a sale of bonds to the contractor, as well as to any other person, and there is no inhibition in the law against the use of money thus raised paying for the construction of the improvement. But no authority is found in the statute for the board to deliver bonds to contractors in advance. It can either issue bonds for borrowed money, or issue to contractors as the work progresses, negotiable evidences of debt, in payment for work actually performed in constructing the improvement. Before any money was borrowed, or

before work was performed by the contractors, the Legislature withdrew authority for issuance of bonds, except upon petition of a majority of the land owners. Therefore the contract exhibited with the pleadings concerning the issuance of bonds was not an enforceable one, if its recitals reflect the board's action in letting it.

Rehearing is denied.