PHILPOT *v.* TAYLOR.

Opinion delivered April 8, 1929.

*Rowell & Alexander* and *Wooldridge & Wooldridge,* for appellant.

*A. F. Triplett,* for appellee.

HUMPHREYS, J. This suit was brought by appellants against appellees to enjoin the commissioners of Paving District No. 104 of the city of Pine Bluff and Annex-

ation No. 1 thereto from carrying out agreements of date December 10, 1928, with J. P. McNulty, for the construction of the improvements therein at a total cost of $69,452.59, and with the Merchants' & Planters' Title & Investment Company for the purchase of the bonds at $98.15, upon the ground, among others, that the agreements were illegal, and contrary to public policy.

The material allegations of the complaint were denied by appellees, and the cause proceeded to trial upon the issues joined and the testimony adduced by the parties, which resulted in a decree setting aside the agreement for the sale of the bonds to make the improvements in the original district, because one of the commissioners of the district was a director in the Merchants' & Planters' Title & Investment Company, but upholding the sale thereof in the annexation because none of the appellants were property owners in the annexation, and for that reason were without right to question the sale of the bonds to construct the improvement in the annexation, and in the dismissal of appellants' complaint with reference to the agreement to construct the improvements in the annexation, for the same reason with reference to the construction of the improvement in the original district, because same was not illegal and against public policy.

Appellants have only appealed from the decree upholding the construction of the contract in the original Paving District No. 104, so we shall limit the substance of the statement of facts and our decision to the matters involved on the appeal.

The facts reflected by the record are practically undisputed, and are substantially as follows:

Early in November, 1928, the commissioners of said district decided that they would let the construction work in the district to the lowest bidder, and that they would sell the bonds of the district to the highest bidder on the 26th day of November, 1928. Pursuant to a published notice to that effect, the commissioners met on the 26th

day of November, 1928, and received bids for the construction work from three contractors, viz., J. P. McNulty, T. L. James & Company, Inc., and Philpot Construction Company. The total of each bid for the construction work in the original district, as well as the annexation thereto, was as follows:

J. P. McNulty....................................................$73,198.20
James Construction Co. Inc........................... 71,960.34
Philpot Construction Co............................... 69,745.64

After the bids were opened, the commissioners announced that they would not award the construction contract until after they had received bids for the bonds. A number of bond bidders were present, who bid upon the bonds. The highest bid was made by the Simmons National Bank, its offer being 97.78 cents on the dollar. After the bidding ceased, the bond buyers and the contractors were requested to retire, in order that the commissioners might consider the bids for the construction work and bonds together. As they were leaving the room, the representative of the James Construction Company, Inc., stated to the commissioners that his construction company was controlled by a banking concern, and that, if it were awarded the contract at the price bid, it would also pay an increased price over the best bid for the bonds. The commissioners then went into executive session, and decided to accept the bid from his company on bonds on the condition stated by him, with the understanding that each contractor who bid should have a like opportunity. The contractors were then called in and given the like opportunity to bid on the bonds on condition that they be given the construction work in the district at the price bid by him. T. L. James & Company, Inc., was called first, and offered 99.78 cents on the dollar for the bonds, provided the contract was awarded to it at its bid. J. P. McNulty was next called, and offered 103.78 cents on the dollar for the bonds, provided he should be awarded the work at the price he bid. C. E. Philpot, representing the Philpot Construction

Company, was next called, but declined to entertain the proposition, stating that his bid on the contract represented the cost of doing the work, and that he was a contractor, and not a bond buyer. The commissioners then figured that, by accepting McNulty's bid upon both the contract and bonds, the district would save $229.40 beyond the best separate offer on the bonds and contract, after which it called all the contractors and bond buyers into the room, and announced that the contract would be awarded to McNulty upon his bid of $73,198.20, and that the bonds would be sold to him upon his bid of 103.78 cents on the dollar. On the 10th day of December thereafter the commissioners privately agreed with McNulty to release him from his bid of 103.78 cents on the dollar for the bonds on condition that he would reduce his bid to $69,452.59, which was $293.05 lower than the lowest bid at the public bidding on the 26th day of November, 1928, and on the same day agreed to sell the bonds to the Merchants' & Planters' Title & Investment Company for 98.15 cents on the dollar, which amounted to $229.40 more than the Simmons National Bank's bid publicly made on November 26, 1928. Fred Ingram, one of the commissioners, was a stockholder and director in the Merchants' & Planters' Title & Investment Company, with whom the commissioners contracted to sell the bonds at 98.15 cents on the dollar. Frank R. Allen, who was the engineer of the district, was a business partner of J. P. McNulty in the sale of rock asphalt, which was a different kind of material from that to be used in the construction work in the district.

In the case of *Hopson* v. *Holmes,* 108 Ark. 460, 158 S. W. 771, this court condemned the policy of letting contracts for public improvements upon any other basis than a money basis. It is apparent from the testimony detailed above that the award of the contract on the 26th day of November, 1928, to J. P. McNulty, was not on a money basis, but was hampered by a requirement to pay the highest price for bonds which were being sold to pay

for the work. It would be contrary to sound public policy to adopt any other than a money basis for letting public work, as it would tend to keep *bona fide* contractors, not interested in bond purchases, from attending and bidding. In fact, in the instant case the lowest bidder for the work was eliminated from the bidding because not able to handle or purchase the bond issue.

Appellees contend, however, that, even though the award of the contract to J. P. McNulty, who was the highest bidder, was made because he indirectly accepted bonds in payment therefor by offering the highest price for same, was illegal, yet he was released from purchasing or taking bonds for the work, and a subsequent legal contract was made with him to do the work upon a money basis. It is true that on December 10, 1928, the commissioners released him from his bond bid and awarded the contract to him for $69,452.59, which was $293.05 less than the lowest public bid on November 26, 1928, but at the same time, and as a part of the same transaction, a private agreement for the sale of the bonds was made by the commissioners to the Merchants' & Planters' Title & Investment Company, in which Fred Ingram, one of the commissioners, was interested. This latter transaction on the 10th day of December cannot be reasonably separated from the first transaction on November 26. It is conceded that the bond sale to the Merchants' & Planters' Title & Investment Company was void because Fred Ingram, one of the commissioners, was a director therein, so the net result is that a private agreement awarding the contract to J. P. McNulty was made, without any money to pay him. The transaction was contrary to public policy, and void throughout. Even though the latter transaction was not so interwoven with the first that there could be a reasonable separation of the two, yet it would be contrary to public policy for commissioners to let a contract, either privately or publicly, to a contractor whose business partner was the engineer of the district. The engineer of the district is

practically the final arbiter in the settlement of all disputes, and it would be contrary to public policy to burden him with the temptation to favor his partner when such disputes should arise or to favor him in the grades of materials to be used and the character of workmanship to be done.

On account of the error indicated the decree is reversed, and the cause is remanded, with directions to enjoin the commissioners from carrying out any contract made with J. P. McNulty with reference to construction work in the original district.