FELLOWS v. McHANEY.

Opinion delivered June 8, 1914.

1. IMPROVEMENT DISTRICTS—LEVEE AND DRAINAGE DISTRICTS—CONFLICTING STATUTES.—The Act of 1911, page 479, Special Act 183, creating
   the Fourche Levee District, does not conflict with the act of 1907,
   page 1112, creating the Fourche Drainage District. (Page 369.)

2. IMPROVEMENT DISTRICTS—CONFLICTING TERRITORY—ASSESSMENTS.—A
   levee district may include the same territory covered by a drainage district, and a tract of land may be benefited by both, and it
   is proper to assess the land for the benefits received by each dis-

trict, the assessment being ascertained by the respective agencies making the assessments. (Page 370.)

3. IMPROVEMENT DISTRICTS—REPEAL OF FORMER ACT VALIDATING FORMER ASSESSMENT.—The Legislature may repeal an act under which a drainage district was organized, and at the same time declare that the assessment made under the former act was proper and valid, and such action is beyond judicial review, in the absence of a showing that the assessment was improperly made, or that no benefit could possibly accrue to the property to be taxed. (Page 370.)

4. IMPROVEMENT DISTRICTS—ASSESSMENTS—VALIDITY—JUDICIAL REVIEW. Where a complaint attacking an assessment of benefits under a statute creating a drainage district, simply contends that an assessment validated by the Legislature, is unequal and unjust, the allegations are not sufficient to authorize the court to review the legislative assessment. (Page 370.)

5. IMPROVEMENT DISTRICTS—IMPROPER ASSESSMENTS—REMEDY—REPEAL OF STATUTE.—Where an assessment of benefits was made under Acts 1907, page 1112, creating a drainage district, a land owner does not acquire any vested rights in the remedy provided for the review of the assessment, when the act was repealed and the assessments already made validated by the Legislature. (Page 371.)

6. IMPROVEMENT DISTRICT—ASSESSMENT—REPEAL.—When an act creating an improvement district is repealed after the assessment of benefits has been made, the Legislature may provide for the payment of accrued debts of the district from the assessments. (Page 371.)

Appeal from Pulaski Chancery Court; *John E. Martineau*, Chancellor; affirmed.

### STATEMENT BY THE COURT.

The General Assembly of 1907 passed an act creating the Fourche Drainage District (Acts of 1907, page 1112), and among other things said act provided for a board of assessors to assess the benefits, and provided any person aggrieved by the assessments of said board of assessors should have the right within twenty days to appeal to a court of competent jurisdiction for the correction of any erroneous or unjust assessment.

Appellants were owners of land in said drainage district and were aggrieved at the assessments made against their lands, and had resisted these assessments and had

appealed from the action of said board sitting as a board of equalization, under the authority of the act creating the said district; and in their complaint, which was filed originally to enjoin the collection of the assessments which had been made for the purpose of constructing the improvement, it was alleged that before the beginning of the construction of this improvement, the General Assembly passed an act approved April 11, 1911, entitled, "An Act to create, lay off and establish a Levee District in Pulaski County, Arkansas, to be known as Fourche Levee District." (See Special Acts of 1911, page 479.) And that by said last named act, certain persons were appointed directors and entered upon their duties as such, and are now such directors; that by the terms of said act the directors were empowered to construct levees, necessary for the protection of the lands in the levee district, to make necessary arrangements to that end, to exercise the right of eminent domain, to appoint a board of assessors, to appoint officers, agents and servants, to make necessary contracts to carry out said improvements, to borrow money and to issue bonds, to pledge the revenues of the district, and to do everything necessary for the building of levees in said district, and further by terms of the said act, the directors were required, and it was made their duty to do everything necessary for the "purpose of dredging, digging, widening, strengthening, and maintaining any ditch or removing any levees in the construction of said improvement." It was alleged that said levee district was formed after the property owners had failed to get any relief from the said drainage district, and that the powers granted to, and the duties imposed upon, the directors of this last district are directly and irreconcilably in conflict with the powers and authority conferred upon the said Fourche Drainage District; and the act creating said levee district being later in time and specifically repealing "all laws and parts of laws in conflict therewith" must prevail over the act of 1907 creating the Fourche Drainage District, and that thereafter the board of directors of the drainage district had no

power or authority over the land situated in the levee district.

The complaint further alleged that much of the lands owned by the appellants is of an inferior quality, and the levying and draining of them would not make them at the very best worth more than one-tenth of the assessed benefit, and that their property was assessed in excess of any benefit that will accrue thereto, and result in the taking of their property without compensation; that said assessment is unjust, discriminatory and not uniform— that the assessor did not attempt to determine any particular benefits, but simply ascertained from the board of directors the estimated cost of the improvement contemplated, and then spread out said amount over the district arbitrarily and without regard to any benefits that would accrue to any special piece of property. That in assessing real estate within the city of Little Rock, they arbitrarily placed an assessment of two and one-half per cent on the assessments by the county assessor for general taxation without regard to whether the said assessment for general purposes was equitable and just or not, and that in order to make up the deficit caused by this small levy on the city property, they placed an arbitrary and excessive value of benefits upon the lands lying immediately in the neighborhood of Fourche Bayou and outside the city limits, so that said pretended benefits would be many times the value of the lands after the improvement was made, and thus deprive plaintiffs of their property without compensation and without due process of law.

The original complaint was filed September 26, 1912, but an amended complaint was filed February 10, 1913, in which it was alleged that the board of assessors had acted upon the petitions for reduction of assessments, and their report readjusting the assessments was filed January 22, 1913; but it was alleged that the assessments as readjusted were still unjust, illegal and confiscatory, although it does not appear from the pleadings to what extent the assessments were revised.

This original suit involved the validity of the assessments made by the assessors of this drainage district, and was pending and undisposed of when the General Assembly of 1913 passed an act repealing the act of 1907. See Acts 1913, page 534. Section 2 of the repealing act reads as follows:

"Jurisdiction is hereby conferred on the Pulaski Chancery Court to wind up the affairs of said district, and to that end all persons having claims against the district are required to present the same to said court for adjudication within three months after the passage of this act. Said court shall adjudicate said claims, and shall appoint its receiver to collect upon the assessment of benefits heretofore made, a sum sufficient to pay all claims found to be due, the tax necessary for the payment thereof to be divided into five installments, as near equal as possible."

Appellants insist that the act creating the Fourche Levee District operated to repeal the act creating the Fourche Drainage District, and it is further insisted that the property owners in the drainage district have a vested right to have the validity of their assessments, made under the authority of the act of 1907, passed upon in the manner there provided for, and that the act of 1913 is not a legislative assessment of said property, and does not take away the right of the chancellor to hear the cases which were filed in due time, and were pending in his court at the time of the passage of the act of 1913, repealing the act of 1907.

A demurrer was interposed to the complaint, first, because the court had no jurisdiction to grant the relief prayed for, and, second, because the complaint did not state a cause of action entitling the plaintiffs to the relief prayed for, and this demurrer was sustained, and the complaint being dismissed for want of equity, this appeal has been duly prosecuted.

In accordance with the directions of the act of 1913, a receiver was appointed by the chancery court, who heard the evidence and made a finding as to the indebted-

ness of the district which had been dissolved. The chancery court undertook to apportion the indebtedness against the lands of the district in proportion to the assessment of betterments against said land, and this action of the court constitutes the present assessment which the appellants now complain against.

*Ratcliffe & Ratcliffe,* for appellants.

1. The later act repeals the former and took the lands entirely from under the control of the drainage district. 100 Ark. 504-507; 41 *Id.* 149; 92 *Id.* 266; *Ib.* 600. The later act covers the whole subject and was intended as a substitute for, and to place the lands in, a separate district, and entirely from under the control of the Fourche Drainage District.

2. The assessment is iniquitous and the act of March 3, 1913, Acts, p 534, never validated such an assessment, nor did the Legislature so intend. The chancery court had no jurisdiction. 63 Ark. 543-546; 44 *Id.* 273; Kirby's Digest, § 7798.

3. The suit pending at the time the act of 1913 was passed prevented the Legislature from validating the assessment. Cases *supra.*

*Rose, Hemingway, Cantrell & Loughborough, Carmichael, Brooks, Powers & Rector* and *Moore, Smith & Moore,* for appellee.

1. The appeal should be dismissed. The lands were not taken out of the district by the Fourche Levee District Act. 103 Ark. 452.

2. The assessment is not open to attack. 83 Ark. 54-60; 98 *Id.* 113; 81 *Id.* 562; 104 *Id.* 425; 72 *Id.* 126; 103 *Id.* 132; 83 *Id.* 344; 100 *Id.* 369; 97 *Id.* 322.

3. The claim of appellants that by bringing suit, they acquired vested rights has been often repudiated. 43 Ark. 421; 83 *Id.* 348; 90 *Id.* 601; 58 *Id.* 122; 30 *Id.* 282.

*Frank H. Dodge,* of counsel; *Bradshaw, Rhoton & Helm, amici curiae.*

SMITH, J., (after stating the facts). We think there is no conflict between the acts creating the drainage dis-

trict, and the act creating the levee district. The former was organized for the purpose of draining a large territory and free it, not merely from overflow, but from the existence of a sluggish stream, while the levee district was organized for the purpose of affording protection from overflows to a much smaller section of country. From the description of the two districts, it is apparent that a much smaller area was contained in and protected by the levee district than was contained in and benefited by the drainage district. That the drainage district was larger than the levee district is of no significance, as it is a matter of common knowledge that there are levee districts in the State which contain many drainage districts, and it may be the drainage may not become entirely effective without levee protection. Here the levee district was organized to protect the land against overflows of the Arkansas River. This drainage district was organized principally to protect that district against the inundations of Fourche Bayou and from the diseases which it engenders. It is true that these acts resulted in a double assessment against numerous tracts of land; but a tract of land may be benefited by two drainage districts or by drainage and levee districts, and, if so, there is no want of authority to assess it for the benefits received by each district, the assessment being ascertained by the respective agents making the assessments. *Wilson* v. *Compton Bond & Mortgage Co.,* 103 Ark. 452.

It is true the act of 1907 provided a method for the assessment of benefits against the lands therein situated, and further provided a method by which any land owner who felt himself aggrieved might have his assessment reviewed. And it is true that these appellants were proceeding under the authority of this act at the time of the passage of the repealing act of 1913. But the Legislature might in the first instance have made this assessment without the interposition of any board of assessors, in which event its action would have been final and subject only to the right of the courts to review for an arbitrary and manifest abuse of that power, and having this power

in the first instance, it could afterward exercise it at its pleasure, and it has done so. By this act of 1913, the Legislature ascertained and declared that the assessment previously made was a proper one and validated it, and its action in so doing is beyond judicial review in the absence of a showing that the assessment so validated was arbitrarily made regardless of benefit; or a showing that no benefit could possibly accrue from the improvement sought to be made to the property sought to be taxed.

These are questions of very great importance, but they have been raised and considered and decided in numerous recent cases by this court. *Moore* v. *Board of Directors of Long Prairie Levee District,* 98 Ark. 113; *St. Louis S. W. Ry. Co.* v. *Board of Directors of Red River Levee District No. 1,* 81 Ark. 562; *Board of Directors of Jefferson County Bridge Dist.* v. *Collier,* 104 Ark. 425; *St. Louis S. W. Ry. Co.* v. *Grayson,* 72 Ark. 126; *St. Louis, I. M. & S. Ry. Co.* v. *Board of Directors of Levee District,* 103 Ark. 132; *Sudberry* v. *Graves,* 83 Ark. 344; *Salmon* v. *Board of Directors,* 100 Ark. 369; *Alexander* v. *Board of Directors, Crawford County Levee District,* 97 Ark. 322. It does not appear from the pleadings how the assessors revised the assessments which were attacked in the original complaint, but it is alleged that they are still unjust, illegal and confiscatory.

In *Moore* v. *Board of Directors of Long Prairie Levee District,* it was said: ''Nor can the courts review merely on general allegations that the assessments are 'arbitrary, excessive and confiscatory.' Facts must be pleaded which show that the decision of the lawmakers was not merely erroneous, but that it was manifestly outside of the range of the facts, so as to amount to an arbitrary abuse of power; for nothing short of that will authorize a review by the courts.''

It was not alleged here that appellants' lands would not have been benefited at all by the improvement. They simply contend that the assessment validated by the Legislature, is unequal and unjust, and these allegations are

not sufficient to authorize the court to review a legislative assessment.

Nor do we think that appellants acquired any vested rights in the remedy provided for the review of their assessments by the act of 1907; creating the drainage district; because one must pursue whatever remedy is provided by law for the redress of his grievances. *Green* v. *Abraham,* 43 Ark. 421; *Sudberry* v. *Graves,* 83 Ark. 348; *Pelt* v. *Payne,* 90 Ark. 601; *Sidway* v. *Lawson,* 58 Ark. 122; *Johnson* v. *Richardson,* 44 Ark. 372; *Vaughan* v. *Bowie,* 30 Ark. 282.

It is insisted that the Legislature did not intend to foreclose the right of appellants to proceed under the authority of the act of 1907, because there was no final assessment for the Legislature to validate; and that there could be no final assessment until all errors had been corrected and all inequalities adjusted. But the Legislature determined these matters for itself, when it conferred jurisdiction upon the Pulaski Chancery Court to wind up the affairs of the district, and to adjudicate the claims against it, and to direct its receiver "to collect upon the assessment of benefits heretofore made a sum sufficient to pay all claims found to be due, the tax necessary for the payment thereof to be divided into five installments, as near equal as possible." Three months were given for the adjudication of the claims against the district, and it is manifest that the Legislature having ascertained what the assessment of benefits should be, required only that the indebtedness of the district be ascertained, and then, by calculation, that indebtedness should be divided into five installments.

This assessment is based upon prospective benefits, which can not be realized because of the repeal of the acts creating the district, but such assessments may be made. *Board of Directors, Crawford County Levee Dist.* v. *Dunbar,* 107 Ark. 285; *Davies* v. *Chicot County Drainage Dist.,* 166 S. W. 170.

The decree of the court below sustaining the demurrer is therefore affirmed.