### THIBAULT *v.* McHANEY, RECEIVER.

### Opinion delivered March 22, 1915.

1. IMPROVEMENT DISTRICTS—REPEAL OF STATUTE CREATING—ALLOWANCE OF CLAIMS FOR PERMANENT WORK.—Where the estimated cost of an improvement contemplated exceeds the benefits, the Legislature has no power in a repealing act which validated the assessments, to authorize the chancery court to allow claims for permanent work done under contract with the Board of Directors of the improvement district.

2. IMPROVEMENT DISTRICTS—ESTIMATED COST OF IMPROVEMENT—BENEFITS—LEGISLATIVE ACT VALIDATING ASSESSMENTS.—Where the estimated cost of an improvement contemplated, exceeds the benefits to be derived therefrom, an act of the Legislature validating an assessment for such improvement, is arbitrary and unconstitutional.

3. IMPROVEMENT DISTRICTS—TAKING PROPERTY WITHOUT COMPENSATION—EXCESS OF ASSESSMENT OVER BENEFITS.—To subject the lands of an improvement district to the payment of claims based on contracts for permanent work, in excess of the benefits to be derived, amounts to a taking of private property for public use without compensation.

4. IMPROVEMENT DISTRICTS—CONTRACTS OF BOARD IN EXCESS OF AUTHORITY—RIGHT OF PROPERTY OWNERS TO OBJECT.—The owners of land in an improvement district may set up in the chancery court, the invalidity of contracts made with the board of directors for permanent work, where the same were made before an assessment of benefits was made.

5. IMPROVEMENT DISTRICTS—ASSESSMENT OF BENEFITS—CONTRACT FOR PERMANENT WORK BEFORE MAKING ASSESSMENTS.—The directors of an improvement district who enter upon contracts for permanent work, and have the same executed in advance of an assessment of benefits will be held to have usurped functions foreign to their powers under the statute creating the improvement district, and such contracts will be held to be void. Act 420, page 1112, Acts of 1907, as amended by Act 104, Acts of 1909, page 303.

6. ESTOPPEL—CONTRACTS MADE BY BOARD OF IMPROVEMENT—ESTOPPEL OF LAND OWNERS.—There can be no estoppel in a contractor's favor,

and against land owners, if the subsequent proceedings in the creation of an improvement district failed to warrant the action previously taken by the board of directors of the improvement district.

7.  IMPROVEMENT DISTRICTS—LEGISLATIVE ACT ABOLISHING DISTRICT—PROVISION FOR PRELIMINARY EXPENSES.—Where a local improvement district has been created for the purpose of benefiting the real property included therein, it is within the power of the Legislature, if it abolishes such district, to provide for the preliminary expenses, that is, those expenses which have been incurred in the formation of the district, and in all such proceedings as were necessary, and as were had, in determining the feasibility of the improvement contemplated.

8.  IMPROVEMENT DISTRICTS—ALLOWANCE FOR PRELIMINARY EXPENSES—ANTICIPATED BENEFITS.—Anticipated benefits, though never realized, will justify an allowance for the preliminary expenses incurred in determining whether a contemplated improvement can be made at a cost not to exceed the benefits finally assessed.

9.  IMPROVEMENT DISTRICTS—"PRELIMINARY EXPENSES."—"Preliminary expenses" include the cost incurred in litigation to determine whether or not the act creating the district was valid, and attorney's fees as counsel to the board in the preliminary work of organization; also such costs as expenses for maps, plats, surveys of land and for engineering expenses in preparing the plans and specifications.

10.  IMPROVEMENT DISTRICTS—PAYMENT FOR PRELIMINARY EXPENSES.—Act 127, page 534, of the Acts of 1913, repealing the act creating Fourche Drainage District in Pulaski County, construed as intending to provide for the payment, out of the assessment returned on the lands in the district, of the preliminary expenses incurred in the creation of the drainage district and in ascertaining the feasibility of the proposed improvement, *held* valid.

11.  IMPROVEMENT DISTRICTS—PRELIMINARY EXPENSES—BASIS FOR SPECIAL TAX TO PAY SAME.—The assessed value of the anticipated benefits, which the Legislature validated by Act 127, page 534, of the Acts of 1913, for the purpose of paying the preliminary expenses of the Fourche Drainage District, for the purpose of paying the preliminary expenses incurred, will form the basis upon which the special tax must be levied to pay these expenses.

12.  IMPROVEMENT. DISTRICTS — PRELIMINARY EXPENSES — ASSESSMENT AGAINST LANDS.—To meet the constitutional requirement of equality and uniformity, the preliminary expenses, incurred in the formation of an improvement district must bear equally upon all the lands included in the district in proportion to the value of the anticipated benefits assessed against these lands.

**13. IMPROVEMENT DISTRICTS—ASSESSMENT AGAINST LANDS—UNEQUAL ASSESSMENTS.**—Certain lands included in a levee district were also included within the boundary of a drainage district. *Held*, in assessing the property within the drainage district, for benefits, the land within the levee district can not be assessed for greater benefits than the land in the drainage district, which was not included in the levee district.

**14. IMPROVEMENT DISTRICTS—ASSESSMENT OF BENEFITS—UNIFORMITY.**—The improvement contemplated in Act 420, page 1112, Acts of 1907, as amended by Act of 1909, page 304, can not be arbitrarily divided into sections so as to prevent the assessment from being uniform upon all the property designated in the district according to the basis of the valuation of anticipated benefits from the improvements.

**15. IMPROVEMENT DISTRICTS—EXPENSES FOR PRELIMINARY WORK—BENEFITS—LEGISLATIVE DETERMINATION.**—By Act 420, page 1112, of the Acts of 1907, as amended by Act of 1909, page 304, creating the Fourche Drainage District, the Legislature did not determine for itself that the benefit would exceed the cost of the work contemplated in the creation of the district, but left that to be ascertained by the Board of Assessors, which the commissioners of the district were authorized to employ.

**16. IMPROVEMENT DISTRICTS—TESTIMONY IN EX PARTE PETITIONS—PAYMENT OF PRELIMINARY EXPENSES.**—Under proceedings in the chancery court under Act 127, page 534, Acts of 1913, repealing the act creating the Fourche Drainage District, the recitals in the decree showed that the proceedings by which it was sought to close up the affairs of the drainage district and to adjust and allow all claims against it, were treated as a unit, and all the pleadings and the testimony had in any of the *ex parte* petitions were available in any part of the proceedings.

**17. IMPROVEMENT DISTRICTS—LEGISLATIVE ACT ABOLISHING—PRESUMPTION AS TO AMOUNT OF BENEFITS.**—The Legislature of 1913, by Act 127, page 534, of the Acts of 1913, in abolishing the Fourche Drainage District, did so for the reason that it ascertained that the improvement contemplated under Act 420, page 1112, of the Acts of 1907, would cost more than the benefits to be derived therefrom.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; reversed.

### STATEMENT BY THE COURT.

The Fourche Drainage District was created by special act of the Legislature approved May 28, 1907, Act No. 420, Acts of 1907, page 1112.

The above act was amended by an act approved April 6, 1909, Acts of 1909, page 304. Both the original act and the amendatory act were expressly repealed by Act No. 127, approved March 3, 1913, Acts 1913, page 534. The second section of Act No. 127, Acts of 1913, contains the repealing clause, and is as follows:

"Jurisdiction is hereby conferred on the Pulaski Chancery Court to wind up the affairs of said district, and to that end all persons having claims against the district are required to present the same to said court for adjudication within three months after the passage of this act. Said court shall adjudicate said claims and shall appoint its receiver to collect upon the assessment of benefits heretofore made a sum sufficient to pay all claims found to be due, the tax necessary for the payment thereof to be divided into five installments as near equal as possible."

The board of directors of the Fourche Drainage District filed a petition in the chancery court setting up that "the district has made all the plans necessary for the public improvement contemplated by the act of its creation, has done a very considerable amount of work, has made numerous contracts and has incurred a large amount of indebtedness."

They prayed the chancery court to assume jurisdiction under the repealing act and to appoint a receiver and to proceed to wind up the affairs of the district in accordance with the provisions of that act. The court assumed jurisdiction, appointed E. L. McHaney as receiver, and made an order requiring the parties having claims against the district to file same with the clerk of the chancery court within three months after March 3, 1913.

Claims were presented by various parties amounting in the aggregate to over $100,000. Certain property owners in the district whose lands had been assessed, attacked the claims on the ground that they were not incurred as "preliminary and initial steps" for the purpose of determining the feasibility of the improvement contemplated by the improvement district, but were for permanent work done under contracts, which were made by the board of directors of the drainage district without authority.

Among the claims presented were those of various trust companies, for money advanced the district to pay for the permanent work that was done under these contracts, which the property owners alleged the directors had no authority to borrow. The property owners alleged that these trust companies knew at the time that they loaned the money to the district, that the money was to be used for the purpose of paying debts that had been incurred by the district without authority. They alleged that the work done resulted in no benefit to their lands, and to compel the property owners in the district to pay the debts thus incurred by the directors, would be depriving them of their property without due process of law in violation of the State and Federal Constitutions. Responses were filed to the intervention of the property owners denying its allegations and alleging that the contractors had full authority to proceed to make the contracts as they did, and to borrow the money from the trust companies, and that the money was advanced by these companies "for the legitimate purposes of the district. That the money was loaned to enable the directors of the district to pay contractors and others to whom the district was justly indebted." The allegation of the complaint that the lands of the interveners received no benefit from the expenditures was denied.

The court, after hearing the testimony, allowed the claims of the appellees, amounting in the aggregate to over $100,000.

The Fourche Levee District, which we will hereafter designate "Levee District," was organized by Act No. 183, Special Acts 1911, page 479. The lands in the levee district had already been embraced in the drainage district. The court found that the contractors of the levee district arranged with the contractors of the drainage district to build the levees needed by the levee district. That these levees were built by the drainage district, and that the lands in the levee district were benefited by this work.

The court directed its master, who was also the receiver of the drainage district, to determine the exact cost

of the levee, and ''indicate upon the assessment rolls of the drainage district the land located in the levee district, and extend against said lands such sums out of the benefit already assessed, as would raise a sum sufficient to pay the cost of the levee; that after deducting the cost of the levee from the total indebtedness of the drainage district, the receiver should extend opposite each tract in the drainage district a *pro rata* of the assessments already made, sufficient to pay the balance of the indebtedness found due by the drainage district as indicated in its decree.''

The levee district set up that the improvements made by the drainage district were without the consent of the property owners in the levee district, and were of no benefit unless other and different improvements were made, which would have to be made by the levee district at a great expense before any benefit could be realized.

The master reported that the drainage district built certain levees, which he described, that cost the drainage district $53,796.64, and which he reported should be borne by the drainage district as a whole; he reported $35,000 as the sum which, ''in equity and justice should be borne by the property benefited by said levee, which is all the property within the limits of the Fourche Levee District.''

The Fourche Levee District filed exceptions to the report of the master. These exceptions set forth that all the lands in the drainage district had been assessed on the basis that the improvements made would benefit all the lands in proportion to the amounts assessed against these lands; that the master erred in changing the assessments so as to place against the lands in the levee district a greater amount than was intended by the assessors, and was contrary to the act of March 3, 1913, dissolving the drainage district. The exceptions further specified that the master erred in certain designated amounts allowed against the levee district as its proportion of the expenses incurred, and in not allowing credits for money expended

by the levee district which should be charged to the drainage district.

The court overruled the exceptions of the levee district. The court entered a supplementary decree reciting the filing of the assessment rolls, describing the property upon which the taxes were to be assessed, and showing the assessment against each piece of property and confirming these assessments and directing the receiver to collect these assessments as follows:

"Ten per cent of the benefits as assessed by the board of assessors of the Fourche Drainage District on all property situated in the Fourche Drainage District, except the property situated in the Fourche Levee District, and upon all property situated in Fourche Levee District an assessment of ten per cent on the benefits assessed by the board of assessors of the Fourche Drainage District for the common purpose of paying the debts and expenses, and 20 per cent additional on the same by reason of the special benefits arising from the building of the levee, paid for out of funds borrowed by the directors of the Fourche Drainage District."

The court decreed that the assessments should be paid in five installments, or greater sums, at the option of taxpayers, and fixed a time for the payment of the first installment of assessment and declared the same a lien on the real estate from the time of the decree, directed the receiver to give notice annually of the time of the payment of assessments, and appointed a collector to collect these assessments. The court retained control of the cause for such further orders and decrees as might be necessary.

The Fourche Levee District and W. C. Ratcliffe, for themselves and others owning land in the levee district, filed protests against the levy of taxes against the lands, setting up, among other things, "that the receiver had placed a levy of 10 per cent on all lands outside of the levee district, and had arbitrarily placed a levy of thirty per cent on all land in the levee district contrary to the act of March 3, 1913, which contemplates a uniform percentage upon the assessment of benefits heretofore

made;" that the assessment was "unjust, confiscatory and discriminatory, and would result in the destruction of the rights of property without benefit and without compensation, contrary to the provisions of the Constitutions of Arkansas and of the United States."

Other exceptions were filed by one of the property owners, setting forth that the assessment exceeded the worth of the property and benefits derived from the improvement contemplated; that the assessors placed a nominal assessment of benefits on property in the city, and an excessive assessment upon property beyond the city limits and upon unplotted lands within the city, making same unjust and discriminatory.

These protests were overruled, and from the final decree entered, this appeal has been duly prosecuted. Such other facts as are necessary will be stated in the opinion.

*Ratcliffe & Ratcliffe,* for appellants.

1. The levy of the extra assessment of 20 per cent upon the lands was invalid. 59 Ark. 344; Page & Jones, Taxation by Assessment, § § 222, 223; 49 Ark. 199; 59 *Id.* 344; Page & Jones, 229-234; 39 A. L. R. 456; 86 Ark. 1, 9; 253 Ill. 578; 32 Ark. 31, 38-9; 107 Ark. 285; 172 U. S. 269; 75 Ark. 126; 66 *Id.* 466; Suth. Stat. Const., § 332; Cooley's Const. Lim., 253; 150 Ill. 80; 143 *Id.* 92; 48 Ark. 370; *Ib.* 251; 107 *Id.* 285, 290; 80 *Id.* 98; Page & Jones, § 867.

2. Only debts incurred for preliminary expenses could be allowed. 106 Ark. 296; 39 Ark. L. R. 456. Nothing could be allowed for permanent work. 32 Ark. 31, 39; 83 *Id.* 54; 86 *Id.* 1; 172 U. S. 269; 176 Ill. App. 455; 258 Ill. 509; 248 *Id.* 42; 79 Ark. 229; 109 *Id.* 60; 211 Ill. 241; 148 *Id.* 632; 213 *Id.* 620; 48 Ark. 370; 107 *Id.* 285, 289; 111 Mass. 454.

*J. W. Blackwood,* for appellee.

1. The Act of 1913 gave the chancery court power to collect upon the assessments of benefits a sum sufficient to pay all claims found to be due. The act does not limit the court to initial or preliminary expenses.

The Legislature had the power to validate the assessments. Besides, the property owners were estopped. 59 Ark. 344; 70 *Id.* 451; 115 Ark. 88; 112 Ark. 357; 107 Ark. 285; 98 Ark. 113; 81 *Id.* 562; 104 *Id.* 425; 72 *Id.* 126; 103 *Id.* 132; 83 *Id.* 344; 100 *Id.* 369; 97 *Id.* 322.

2. All questions as to the validity of the assessments have been settled. 113 Ark. 363; 99 Ark. 100; 103 *Id.* 109.

WOOD, J., (after stating the facts). I. The first question is whether or not the chancery court under the act could allow claims arising under contracts made with the directors of the drainage district for work done of a permanent nature as contemplated by the improvement district in advance of an assessment of benefits.

In *Kirst* v. *Street Improvement District No. 120,* 86 Ark. 1-8, we said: "Special assessments for local improvements find their only justification in the peculiar and special benefits which such improvements bestow upon the particular property assessed. Any exaction in excess of the special benefits is, to the extent of such excess, a taking of property without compensation." See also *Coffman* v. *St. Francis Drainage District,* 83 Ark. 54; *St. Louis S. W. Ry. Co.* v. *Board of Directors, etc.,* 81 Ark. 562. See, also, *Cribbs* v. *Benedict,* 64 Ark. 555-61; *Alexander* v. *Bd. of Directors Crawford County Levee District,* 97 Ark. 322; *Board of Directors Crawford County Levee District* v. *Dunbar,* 107 Ark. 285-290.

In the recent case of *Cherry* v. *Bowman,* 106 Ark. 39, the board of directors of an improvement district in a city entered into a contract for the work to be done contemplated by the improvement district before there was an assessment of the benefits. It was sought in that case to restrain the board from proceeding to carry out the terms of the contract. In that case we held that there was no inhibition against letting the contract for the improvement before the assessments had been made. The basis of the refusal to grant the injunction prayed was expressed as follows:

"There is no showing or contention that the contractor is about to proceed or threatens to proceed with the execution of his contract before those matters herein mentioned are determined, and which must be determined before his contract becomes binding on the district." One of the matters mentioned as being necessary to determine before the contract became binding on the district was "that the cost shall not exceed the benefits."

The statute creating the Fourche Drainage District provides that the assessment books prepared by the assessors shall show the value of the lands without the improvements contemplated by the act, and the estimated increased value by reason of such improvements." The law, therefore, creating the drainage district put into any contract which its directors might make for the improvements contemplated by the act, the provision that there should be an assessment of benefits before any contract can be entered into that would be binding on the district or the land of the property owners included therein. *Cherry* v. *Bowman, supra,* is authority for holding that while a tentative contract might be entered into for the improvement contemplated in advance of the assessment of benefits, yet such contract could not be performed or consummated by doing the work contemplated and would not be operative and binding on the district or the lands included therein, until there had been an assessment of benefits.

In *Fellows* v. *McHaney,* 113 Ark. 363, 168 S. W. 1099, speaking of act of 1913 repealing the act creating the drainage district, we said: "By this act of 1913, the Legislature ascertained and declared that the assessment previously made was a proper one, and validated it, and its action in so doing is beyond judicial review, in the absence of a showing that the assessment so validated was arbitrarily made, regardless of benefit, or a showing that no benefit could possibly accrue from the improvement sought to be made to the property sought to be taxed. In that case there were no allegations that the "lands would not have been benefited at all by the improvements" the conten-

tion simply being that "the assessment as validated by the Legislature was unequal and unjust. But in the case at bar, it was alleged and proved that the cost of the improvement contemplated by the district would exceed the value of the benefits returned by the board of assessors as finally equalized under the act by such board sitting as a board of equalization.

The amount for which the act creating the district authorized a bond issue was $150,000. The directors soon after the creation of the district issued a statement in the form of a letter to the land owners in which they set forth that the engineers estimated that the work could be done for $150,000, and it was estimated that the total cost to the property owners would be about one per cent of the assessed value. The above letter was circulated before the board had final plans drawn for the work. The work under these final plans was estimated to cost over $1,500,000. The board entered into contracts amounting to $1,000,000, and work had been done and debts created under these contracts to the amount of over $100,000 before the assessment of benefits contemplated by the act was completed, which occurred January 22, 1913. This final assessment of the total benefits, according to the testimony of the assessors which is not challenged or controverted, showed that the benefits would be less than the estimated cost of the work to be done. The estimated cost of the work to be done did not include interest on the bonds which the statute provides shall run from ten to twenty years, nor did it include the cost of maintenance.

(1-2-3) Such were the affairs of the district when the Legislature passed the repealing act validating the assessment. But this act could not and did not validate the unauthorized contracts into which the board had entered and the claims for amounts which had accrued under these contracts. But as we have seen in the case at bar, it is alleged, and the uncontroverted proof shows, that the estimated cost of the improvement contemplated exceeded the benefits. Such being the case, the Legisla-

ture itself had no power to authorize the chancery court to allow claims for permanent work done under contracts with the board of directors of the drainage district. To subject the lands of the drainage district to the payment of such claims would be taking of private property for public use without compensation. Where the uncontroverted facts show, as they do here, that the estimated cost of the improvement contemplated exceeds the benefits to be derived therefrom, an act of the Legislature validating an assessment for such improvement would be arbitrary and unconstitutional. *Peay* v. *City of Little Rock,* 32 Ark. 31-39; *Coffman* v. *St. Francis Drainage District,* 83 Ark. 54; *Kirst* v. *Street Improvement District,* 86 Ark. 1.

(4-5-6)    The contracts made for permanent work to be done in advance of the assessment of benefits, and the claims arising thereunder for work done, were premature and void, and under the facts of this record are not binding upon the lands of the drainage district. The land owners of the improvement district were not estopped from setting up the invalidity of the contracts made with the board of directors for permanent work. The districts were created by acts of the Legislature and the duties of its directors were defined. The act creating the district, as amended, provided for the improvement contemplated to be made without the consent of the owners of property in the district; and the proceedings under the statute were, therefore, *in invitum,* so far as the property owners were concerned. The property owners were not called upon to protest against the making of the proposed improvement, for they had a right to assume that the board of directors would comply with the Constitution and statute and not provide for an improvement, the cost of which would exceed the actual benefit to their property, and until the assessment of benefits had been made, they could not know that the cost of the improvement would exceed the benefits. In entering upon contracts for permanent work and having the same executed in advance of an assessment of bene-

fits, the directors were usurping functions foreign to their powers under the statute creating the improvement district. In *Newport* v. *Railway Co.*, 58 Ark. 275, it is said "the doctrine of equitable estoppel has no place in a case where usurped powers have been exercised by municipal officers"; and in *Watkins* v. *Griffith*, 59 Ark. 344-361, the court quotes the above and also from *Mulligan* v. *Smith*, 59 Cal. 233, as follows: "It was the duty of those who were authorized to exercise powers which might bind the real property of defendant to see that the provisions of the statute under which they acted were complied with." In the recent case of *Cherry* v. *Bowman, supra*, we again recognize the doctrine that there can be no estoppel in the contractor's favor if the subsequent proceedings in the creation of an improvement district fail to warrant the action previously taken. Here, as we have seen, the proceedings of the directors in having the permanent work done in advance of the assessment of benefits were wholly unauthorized.

II. To sustain the act of the Legislature, we must presume that the word "claims" as used was intended to mean only such claims as were valid under the law creating the drainage district. No others will be binding on the owners of real property in the district.

What claims were valid?

(7-8-9)    In the recent case of *Board of Directors* v. *Dunbar, supra*, we held that where an improvement district is dissolved or dismembered "the Legislature may, in order to provide for payment of expenses incurred in initiating or forwarding the improvement, authorize an assessment based on the benefits which were anticipated," and in *Davis* v. *Chicot County Drainage District et al.*, 166 S. W. 170, 112 Ark. 357, where an improvement district was dissolved, we said: "The right of the Legislature to apportion the preliminary expense of a dismembered improvement district in proportion to the anticipated or prospective benefits is asserted in the case of *Board of Directors* v. *Dunbar, supra*." According to these cases, where a local improvement district has been

created for the purpose of benefiting the real property included therein, it is in the power of the Legislature, if it abolishes such district, to provide for the preliminary expenses, that is, those expenses that have been incurred in the formation of the district, and in all such proceedings as were necessary, and as were had, in determining the feasibility of the improvement contemplated. Anticipated benefits, though never realized, will justify an allowance for the preliminary expenses incurred in determining whether the contemplated improvement can be made at a cost not to exceed the benefit finally assessed. Under the terms ''preliminary expenses'' would be included the cost incurred in litigation to determine whether or not the act creating the district was valid, and attorney's fees as counsel to the board in the preliminary work of organization, etc.; such costs as expenses for maps, plats, surveys of land and for engineering expenses in preparing the plans and specifications. In other words, all expenses incident to the investigation by which it is sought to determine whether the value of the benefits to the lands by the improvement contemplated would exceed the cost of such improvement and thereby warrant its completion.

(10)    It follows that the act under review should be construed as intending to provide for the payment, out of the assessment returned on the lands in the district, of the preliminary expenses incurred in the creation of the drainage district, and in ascertaining the feasibility of the proposed improvement.    As thus construed, it is a valid act.

III.    (11-12)    The assessed value of the anticipated benefits, which the Legislature has validated for the purpose of paying the preliminary expenses incurred, forms the basis upon which the special tax must be levied to pay these expenses.    The Fourche Drainage District was one entire project which included, in order to carry out the improvement contemplated, the building of levees and the digging of canals, ditches, etc.    The preliminary expenses incurred were in determining the feasibility of the en-

tire scheme, considering all the work that was necessary to be done in order to consummate it. To meet the constitutional requirement of equality and uniformity, these preliminary expenses must bear equally upon all lands included in the drainage district in proportion to the value of the anticipated benefits assessed against these lands. *Shibley* v. *Fort Smith & Van Buren District,* 96 Ark. 417. For the purposes of the assessment of the value of anticipated benefits and the levy of the tax based on such assessment to pay preliminary expenses, all of the lands included in the drainage district embracing the lands in the levee district must be regarded as similarly situated. The assessment was made upon the lands included in the levee district not for the purpose of ascertaining the feasibility of building levees in that district independent of the improvement contemplated by the drainage district, but the assessment was made upon these lands because they were included in, and were a part of the drainage district, and the building of the levees was an essential part of the improvement contemplated by the creation of the drainage district.

(13) So far as the scheme of the Fourche Drainage District is concerned, the lands in the levee district were also included within the drainage district and stood in the same relation to the drainage district as all the other lands embraced in the drainage district; the lands were assessed for the improvement contemplated by the drainage district considered as a completed project and the assessment was made because they were the lands of the drainage district and without reference to their being also included in a separate levee district. The expenses incurred were incident to the determination of the feasibility of the project contemplated by the drainage district and not for any purpose connected with the creation of the levee district considered separate and apart from the drainage district.

No authority can be found in the act abolishing the drainage district for the levy of an extra assessment of 20 per cent upon the lands included in that portion of

the drainage district known as the Fourche Levee District. The levy of the special tax must be in the same proportion according to the value of the assessed benefits upon all the lands included in the drainage district, without regard to the fact of their being also included within the levee district. The levy of this extra assessment is in conflict with the provisions of our Constitution and statutes requiring uniformity and equality in taxation. To validate this extra assessment on that portion of the lands in the drainage district included within the levee district would be tantamount to exempting the lands in the drainage district outside of the territory embraced in the levee district of their just and equal proportion of the tax, and requiring the particular lands in the levee district to bear an unequal burden. This can not be done. See *Davis, as Collector,* v. *Gaines,* 48 Ark. 370; *Town of Monticello* v. *Banks,* 48 Ark. 251.

The preliminary expenses that were incurred were for the common benefit of all the property included in the drainage district, and all of this property must share alike in the payment of the expenses. See *Board* v. *Dunbar,* 107 Ark., *supra.*

(14) The improvement that was contemplated can not be arbitrarily divided into sections so as to prevent the assessment from being uniform upon all the property designated in the district according to the basis of the value of anticipated benefits from the improvements. See 2 Page & Jones, Taxation by Assessment, § 688.

IV. The decree of the court was based upon a misconception of the power conferred upon it by the statute under review abolishing the drainage district, and was erroneous insofar as it allowed indiscriminately, claims arising out of contracts for permanent work, and claims for preliminary expenses, and in ordering the levy of an extra tax of 20 per cent upon the lands in the levee district in addition to the tax of 10 per cent upon all the lands in the drainage district.

The decree is, therefore, reversed and the cause is remanded with directions to ascertain from this record,

and other testimony if necessary, the claims for preliminary expenses, and to allow these claims; and also to allow the claims of the trust companies or others whose money was furnished to pay the claims for preliminary expenses to the extent and for the amounts only of such preliminary expenses; and to disallow and dismiss all claims for permanent work, and for such other and further proceedings looking to the adjustment and payment of the claims allowed as may be necessary and not inconsistent with this opinion.

HART and SMITH, JJ., dissenting.

### OPINION ON REHEARING.

WOOD, J. I. It is insisted on rehearing that when the Legislature created the Fourche Drainage District and invested its board of commissioners with power and made it their duty to do the work designated in the act—that is, to effectually drain the Fourche bottoms and other land within said district—that this gave the board the right to enter into contracts for doing the work contemplated, to borrow money necessary to meet the obligations incurred by reason of these contracts; that the language of the act is in effect mandatory and leaves no power to determine whether the cost of the contemplated improvements would exceed the benefits to be derived therefrom; that the Legislature had determined for itself that the benefits would exceed the cost of the improvements, and that therefore the court erred in holding that contracts for permanent work to be done in advance of the assessment of benefits were premature and not binding on the land of the district.

(15)    But we adhere to our opinion that the proper construction of the act is that the Legislature did not determine for itself that the benefits would exceed the cost of the work contemplated in the creation of the district, but left that to be ascertained by the board of assessors, which the commissioners of the district were authorized to employ. This is clearly shown by the language used in sections 6, 7, 8 and 9 of the act.

Section 6 provides for a board of assessors who "shall make an assessment of all the land," etc., entering on the books provided for the purpose, "the value thereof *without the improvements contemplated by this act and the estimated increased value thereof by reason of such improvements.*"

Section 7 provides that the assessors "shall make their assessment at such time as they may be directed to do so by the board of directors, and shall place in the hands of the president of the board of directors their report of assessment," etc. This section also provides for a hearing before the board of assessors of the complaints of the property owners who may be "aggrieved by the action of the board of assessors." And it constitutes the board of assessors a board of equalization to "adjust any erroneous or wrongful assessments," and it makes "their assessment as adjusted" the assessment of the district.

Section 8 provides that the board of directors "shall have the power, and it is hereby made their duty to assess, levy and designate a tax upon the increased value of betterment estimated to accrue from improvements contemplated by this act upon all lands, * * * but such tax shall not exceed 6 per cent per annum of the betterment accruing to said property," etc.

Section 9 provides for the collection of the taxes levied upon the basis of said assessment and prescribes the manner of procedure against the lands in event the taxes are not paid within the time prescribed for such payment.

Without going into any detailed analysis of these provisions, it is plain that when they are all considered together and in connection with the other provisions of the act, as they must be, that the Legislature did not determine in advance that the benefits to accrue would exceed the cost of the improvement contemplated in the creation of the drainage district. But, on the contrary, the language of the above sections of the act shows that the Legislature intended that before the permanent work of improvement should be undertaken and completed that

an assessment of benefits should be made which would exceed the cost of the improvement contemplated by the act. Necessarily this is true, for otherwise, as shown in the original opinion, the act would have been in conflict with the Constitution. Art. 2, § 22, Const. 1874. The act clearly provides that the assessment should be made by "the board of assessors" employed by the board of commissioners of the district, and it designates the property to be assessed and prescribes the manner in which the assessors shall proceed to make the assessment. The language in which the above provisions are couched excludes the idea that the Legislature determined for itself in advance that the benefits of the contemplated improvement would exceed the cost thereof. If the Legislature had determined in advance that the benefits to be derived from the contemplated improvement would exceed the cost thereof, it would have doubtless directed the levy of a tax upon the basis of a certain per cent of the assessed value of the property or declared in so many words that the lands in the district would be benefited by the improvement so much an acre on the rural property or so much a lot or square foot on the city property, and would have directed the levee of a tax upon the basis of the benefits thus declared. The language used in the Act of 1907 is entirely inappropriate to express an assessment of benefits made by the Legislature in advance, and if the Legislature had intended to assess the benefits itself without the interposition of a board of assessors, the phraseology to express such an assessment would have been entirely different. It is different in all the instances that have come under our observation where the Legislature has determined for itself in advance that the benefits to be derived from an improvement provided for would exceed the cost of such improvement. Therefore, we differ radically with counsel for appellees in their construction of the act in this particular. The decision of the court was grounded primarily upon the above construction of the act, which was purely a question of law; and after a careful consideration of the able and exhaust-

ive briefs of counsel on rehearing, we are still of the opinion that this construction which we have given to the Act of 1907 is the proper one and the only one that can be reasonably given it.

II.   The next contention made in the briefs for rehearing is that the court erred in holding that the cost of the improvement contemplated would exceed the value of the benefits assessed.   In the original opinion we said "in the case at bar it is alleged, and the uncontroverted proof shows, that the estimated cost of the improvement contemplated exceeded the benefits."   Counsel for the appellants in their original brief stated as follows: "The final assessment shows the total benefits to be fifty to seventy-five thousand less than the estimated cost of work to be done."   Again, "The total assessed betterment was one million five hundred thousand dollars.   The total cost of the work planned was more than one million five hundred thousand dollars."   Again, "In the present instance, the cost of the work exceeded beyond all reason the total benefits that would result from the work."   These statements were nowhere challenged in the briefs of counsel for the appellees or for the receiver.   On the contrary, in their original briefs counsel for appellees and for the receiver seem to have relied upon former decisions of this court, especially in the case of *Fellows* v. *McHaney,* 113 Ark. 363, 168 S. W. 1099, as having determined that Act No. 420, approved May 28, 1907, was a legislative assessment of benefits exceeding the cost of the improvement contemplated, and that therefore the assessment of benefits was not open to question.   Counsel for appellees in their original brief say, "It was settled by this court in *Fellows* v. *McHaney* that the assessment now complained of had become a legislative assessment and not open to question." Again, speaking of the Act of 1913, they say, "The act merely says that the court shall collect upon the assessment of benefits heretofore made a sum sufficient to pay all claims found to be due.   The matter was sent to a court of equity in order that it might do equity.   The assessment is confirmed and stands as the

assessment of the district. And counsel for the receiver say, "All questions as to the validity of this district and validity of the assessments have been settled by the decision of this court," citing *Fellows* v. *McHaney, supra,* and other cases. And again, "Practically all of the questions involved here were considered and decided in the case of *Board of Directors of Crawford County Levee District* v. *Dunbar,"* etc. Since learned counsel for the appellees, and for the receiver, did not challenge the truth of the statements of facts made and relied upon in the brief of appellants, as above set out, the court was led to believe that counsel for appellees and the receiver, while conceding the truth of the facts as above stated in the briefs of counsel for appellants, nevertheless contended that the issue was settled in their favor by former decisions of this court, and especially *Fellows* v. *McHaney, supra,* to the effect that the Legislature had determined for itself in advance that the benefits to be derived from the improvement contemplated by the Act of 1907 would exceed the cost thereof, and that this issue of fact was therefore not open to question. We were thus led into the mistake of saying "that the uncontroverted proof shows that the estimated cost of the improvement contemplated exceeded the benefits" and proceeded to treat the cause as if there were no controversy upon this issue of fact and disposed of the contentions of learned counsel for appellees that the above issue of fact had been foreclosed in their favor by the opinion in *Fellows* v. *McHaney.*

After carefully considering the briefs on rehearing, we believe our characterization of the issues was substantially correct. Appellees filed their petitions setting forth their several claims, some for preliminary expenses, others for permanent work done, and others for money furnished the board to pay for the work that was done. These claims were contested by the appellants, and in the responses filed by the receiver to all the claims it was alleged "that the same was not necessarily an expense incurred in advance of the enjoyment of the benefits, and

was not a necessary and initial expense incurred by the district as originally organized; that the same was not properly based upon the benefits reasonably anticipated and was not for expenses incurred for the common benefit of property in the district and was not in proportion to the anticipated benefits; that the said debt was incurred, if incurred at all, by the abuse of the authority of the board of directors of the district and should not be made a burden upon the taxpayers of said district.'' In an intervention filed by the Braddock Land & Granite Company, attacking the claims of the four trust companies, it was alleged as follows: ''That the board of directors were authorized to make only expenditures necessary for the initial and preliminary steps for the construction of the contemplated improvements which included only the necessary surveys, maps and attorneys' fees and such other things as are comprehended in the terms 'preliminary and initial steps' prerequisite to determining what was necessary to be done prior to the commencement of the actual construction of the improvements contemplated by the Act of 1907 and whether or not such improvements could be made under the provisions of said act. That the board of directors of Fourche Drainage District, in disregard of the limitation of their authority under the Act of 1907, and in excess of their authority, before it was determined that said improvements could be constructed, made large expenditures that can not be embraced in the preliminary and initial steps for which alone said board of directors were authorized to expend money or to incur debts on behalf of the district. That the total amount of such debts, in excess of and beyond the preliminary and initial work, and in excess of the authority of the board, was about one hundred thousand dollars. That the sums claimed by the trust companies are for money loaned to the board of directors to pay such unauthorized debts. * * * That the Fourche Drainage District, and especially the lands owned by the interveners, received no benefit from the expenditure of said money, but that the lands of the interveners were

injured and damaged; that to allow the claim of the trust companies and to charge them against the lands would violate constitutional rights, and that the said claims should be disallowed, except so far as they were for money expended for preliminary and initial work." The trust companies filed responses to the intervention of the Braddock Land & Granite Company and Nettie F. Riffle, denying the lack of authority in the district to make expenditures other than those necessary for the preliminary or initial expenses, and in the responses to the intervention of two of these trust companies it was alleged "that the delivery of the bonds was delayed because the assessment of benefits had not been made and filed and the said bonds could not be approved by counsel until the assessment of benefits had been made and confirmed." Certain land owners filed protests against the levy of taxes, in which they set forth: "That the assessment was unjust, confiscatory and discriminatory, and would result in the destruction of the rights of property without benefit and without compensation, contrary to the provisions of the Constitution of Arkansas and of the United States." Other exceptions set forth that the assessment "exceeded the worth of the property and benefits derived from the improvement contemplated." Thus while it was not alleged *in haec verba* "that the cost of the improvement contemplated by the district would exceed the value of the benefits returned by the board of assessors," the above allegations of the pleadings do clearly show that such was their effect, and we were not in error, therefore, in so stating.

However, we do not regard it as material or important that this issue should have been raised by specific allegations in the pleadings to that effect. It was an issue that was necessarily raised by the presentation of claims under the act and by the contest of those claims on the grounds that no claim should be allowed other than those for preliminary expenses.

The statement in the opinion, towit, "The uncontroverted proof shows that the estimated cost of the im-

provement contemplated exceeded the benefits," we find is not accurate for the reason that Judge Kavanaugh testified that "the directors figured that the cost of the work would be $950,000;" and the engineer of the district, Mr. Lund, testified that the estimated cost of the completed work of construction was $900,000. On the other hand, Mr. Polk, who was a member of the board of assessors, testified, "We knew just what the estimated cost of the district would be. * * * We were trying to adjust those assessments to see if we could not meet the requirements of the cost of the district. I think on our wind-up we were from fifty to seventy-five thousand in our equalization below the actual cost they had estimated of doing the work." The testimony of Mr. Moore, another member of the board of assessors, was as follows: "The assessors were told by the directors of the drainage district the approximate amount that the work would cost. Their assessment as first made was more than the estimated cost of the work, but after being equalized was less than the cost of the improvement. There was never any assessment that was equal to the cost of the improvement." So it was not accurate to say that the uncontroverted proof showed that the cost of the improvement exceeded the assessment of benefits.

The above testimony was elicited upon the hearing of some of the *ex parte* petitions of the claimants, and counsel for the trust companies contend that this testimony was not introduced on the hearing of their claims and that it would therefore be obviously unfair and contrary to the rules of practice to have the testimony considered in order to invalidate their claims. They say, "There is no testimony in the record bearing on this issue, and there is none introduced on the hearing of the claims of our clients that tends to sustain the issue."

(16) The decree of the court allowing the claims of the trust companies, appellants, and other claimants, recites as follows: "All of the claims are submitted to the court upon the claims filed with the receiver and the response of the receiver thereto, and upon the intervention

of the Braddock Land & Granite Company and Nettie F. Riffle, and the response of the receiver thereto, and upon the deposition of the following witnesses taken *ore tenus* by consent" (naming them) "to be used as evidence in all the claims and issues arising herein wherever competent, material or pertinent." So the recitals of the decree show that the proceedings by which it was sought to close up the affairs of the drainage district and to adjust and allow all claims were treated as a unit, and all the pleadings and the testimony had in any of the *ex parte* petitions were available in any part of the proceedings. Therefore, it is not correct to say that there was no testimony in the record bearing upon the claims of the trust companies tending to show that the cost of the improvements exceeded the assessed benefits.

But even if the contention of counsel in this respect were correct, still the claims of the trust companies would necessarily fail, for the burden was upon the claimants to show that their claims were valid under the Act of 1913. That act abolishes the drainage district and makes provision for the allowance of claims. As we have shown in the opinion, the word "claims" as used in the act necessarily meant valid claims, and no claims could be valid for permanent work done until it was first determined that the benefits to be derived from the improvement would exceed the cost thereof. Every presumption must be indulged in favor of the validity of the Act of 1913. It can not be presumed that the Legislature of 1913 validated the assessment made under the Act of 1907 as a legislative assessment of benefits to exceed the cost of the improvement contemplated by that act; for if the Legislature of 1913 had so determined, then its act in abolishing the district would be unconstitutional and void, because to abolish the district, and burden the real property therein with assessments to discharge the obligation of valid contracts made with the board of commissioners for the permanent improvement contemplated which were not made would deprive the land owners of

their property without due process of law. Const. 1874, art. 2, § 21.

Therefore, in order to uphold the Act of 1913, it must be presumed that the Legislature ascertained that there had been no assessment of benefits to exceed the cost of improvement and that the assessment of benefits as made under the provisions of the act of 1907 was in an amount less than the estimated cost of the improvement therein provided for.

In 6 R. C. L., section 101, it is stated: "If it was required that the Legislature should have evidence of particular facts in order properly to pass a statute, it is presumed that such evidence was actually and properly before the legislative body and that it acted on a full knowledge of the facts." See also sections 111 and 112.

In *Sweet* v. *Rechel,* 159 U. S. 380-393, the Supreme Court of the United States said: "It is a well settled rule of constitutional exposition that if a statue may or may not be, according to circumstances, within the limits of legislative authority, the existence of the circumstances necessary to support it must be presumed."

(17) Therefore, it will be presumed that the Legislature of 1913 in abolishing this district, did so for the reason that it ascertained that the improvement contemplated under the Act of 1907 would cost more than the benefits to be derived therefrom. This is the only reason that would justify their act in abolishing the district; for, as above stated, otherwise to abolish a district after valid contracts had been let for the permanent work to be done, and after work had been done under these contracts and money furnished thereunder, would violate the well known provision of the Constitution prohibiting the impairing of the obligation of contracts and depriving parties of their property without due process of law.

In the recent case of *Morgan Engineering Company* v. *Cache River Drainage District,* 115 Ark. 437, 172 S. W. 1020, we said: "It is well settled under our Constitution that the Legislature may not pass an act impairing the obligation of a contract." That was a case where a drain-

age district had been abolished, and the court was passing upon the question of the allowance of the claims of an engineering company for the preliminary expenses of surveying, the filing of plans, etc.

The appellees claim under the act, and the burden was upon them to show that their claims were valid. Since the Legislature abolished the drainage district for the reason, as we must presume, that the cost of the improvement exceeded the benefits, the only claims that would be valid, and that could be allowed, under former decisions of this court, as we endeavored to show in the original opinion, were claims for preliminary expenses. If any reason existed for abolishing the district other than that the cost of the improvement contemplated would exceed the benefits, it devolved upon the appellees to prove it, and they have not done so. In our opinion greater weight should be given to the testimony of the members of the board of assessors, whose duty it was to make the assessment of benefits. Their testimony shows that they knew what the estimated cost of the district would be, and that they were trying to adjust the assessment of benefits so as to see if they could not meet "the requirements of the cost of the district." It was their duty to finally adjust and equalize these assessments. Certainly it could not be correctly stated that the testimony of the two witnesses who testified as to the estimated cost of the work should be given greater weight than the testimony of the members of the board of assessors, who, after knowing what this estimated cost would be, testified that after they had equalized the assessment of benefits there was never any assessment that was equal to the cost of the improvement. But even if the testimony were evenly balanced on this issue, which is the utmost in favor of the appellees that could be said of it, still the burden of proof being upon the appellees they must necessarily fail.

The motion for rehearing is therefore overruled.