## CHERRY *v.* BOWMAN.

### Opinion delivered December 16, 1912.

1. IMPROVEMENT DISTRICTS—AWARD OF CONTRACT.—When a street improvement district is properly formed under the statutes of the State, the board of directors of said district will not be restrained from proceeding to carry out the terms of a contract, entered into with a contractor for paving the street, where it appears that the contract was awarded before the value of the benefits was assessed. (Kirby's Digest, § 5664, *et seq.*) (Page 48.)

2. SAME.—There is no expressed or implied inhibition in the statutes against advertising and letting the contract, for the improvement, before the assessments have been made. (Page 43.)

3. IMPROVEMENT DISTRICTS—DISCRETION OF BOARD.—The board of directors of a street improvement district, have a discretion under the statute as to their procedure. (Page 48.)

4. SAME—CONTRACT FOR IMPROVEMENT.—The contract for the improvement becomes binding upon the district only if it conforms to the petition, does not exceed the assessed benefits, and the total cost of the improvement does not exceed 20 per cent. of the value of the property in the district assessed for county taxation. (Page 47.)

5. INJUNCTION—CONTRACTOR.—An injunction will not be granted to restrain the contractor whose bid has been accepted by the board of directors of an improvement district, before the assessment of benefits has been made, from taking some action under the same, in the absence of a showing that he intends to do. so. (Page 47.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

#### STATEMENT BY THE COURT.

Appellant, who was the plaintiff below, filed his complaint in the Pulaski Chancery Court against the defendants, who composed the Board of Improvement of Street Improvement District No. 167, of the city of Little Rock, and prayed the order of that court, restraining the said board from proceeding to carry out the terms of a contract which said board had

entered into with one M. D. L. Cook for the construction
of the improvement for which the improvement district
had been created: towit, the paving of a portion of East
Fourth Street in said city.

There is an agreed statement of facts in the record, from
which it appears, that the plaintiff is the owner of real prop-
erty in the district, that the first petition required by law
was signed by more than ten property owners within the
district and designated the boundaries of the district, and
described the improvement desired to be made; that this
petition was granted by the city council and an ordinance
was passed establishing the district as prayed for, and specified
the purpose of the improvement to be undertaken; that,
within less than ninety days after publication of this first
ordinance, a second petition, signed by a majority in value
of the owners of real property in said district, was presented
to the city council, and specified the improvement desired,
and suggested the names of the defendants as a board to
proceed with the work; that these citizens, whose selection
was petitioned for, possessed the qualifications required by
law and were duly elected by the city council and thereafter
duly qualified and organized in the time and manner required
by the law; that the board selected an engineer, and, by reso-
lution, directed him to prepare plans and specifications for
the performance of the work; that the plans were prepared
by the engineer and approved by the board, and these plans
were so prepared that bids were invited for the use of either
creosoted blocks or asphalt. A notice to contractors inviting
bids was published in Chicago, St. Louis, and the two daily
papers of Little Rock, and from among a number of bids re-
ceived the bid of defendant Cook was accepted, and the board
entered into a written contract with him for the construction
of the improvement. Among other provisions of the contract
was one that the work should be commenced within ten days
after written directions to proceed had been given by the
engineer to the contractor. And it was further stipulated
that the board of improvement had not at the time said
contract was entered into made report to the city council
of the character of material selected by them, nor had
they made report of the estimated cost of the improve-

ment, nor had the board, prior to the receipt of said bids, determined the character of the material with which they would pave said street; but had deferred reporting to the city council the estimated cost of the work until they should determine the character of the material to be used; that the assessors had not been appointed by the city council to assess the benefits of the property in said district, and no assessment of the property had been made; that no ordinance had been presented to or passed by the city council, levying an assessment against the real property in said district for the purpose of paying the costs of the improvement, and making the assessment a lien on the land.

The appellant says in his brief: "The sole ground upon which we rest our appeal is that, until the value of the benefits had are assessed, the board of the East Fourth district had no power, right or authority, to impose any debt or liability upon the property in the district, as by awarding and executing a contract for the improvement."

Is this position well taken?

*Whipple & Whipple* and *J. A. Comer*, for appellants.

It was essential to the validity of the contract and to the right of the board of improvement to award the same, that certain preliminary acts should have been performed before the contract was entered into. The improvement district statutes exactly prescribe the methods and routine to be followed in organizing a district and improving the same: The letting of the contract is the eighth, and practically the last, thing to be done. 27 S. W. (Ark.) 234.

Before the contract is let the board of improvement should know (1) the plans to be followed for the improvement; (2) their cost; (3) whether as planned the improvement will exceed 20 per cent. of the assessed valuation of real estate in the district, and (4) whether the cost will exceed the total value of the benefits assessed by reason of the improvements. If the last two questions can not be answered in the negative the board has no authority to proceed further; and until the value of the benefits has been assessed the board of improvement has no authority to impose any debt or liability upon the property in the district. 86 Ark. 1; 109 S. W. 526; Kirby's

Dig., § § 5667, 5680; 118 S. W. 109; 114 S. W. 42; 117 S. W. (Ark.) 1073; 93 S. W. 867; 109 Mo. App. 721, 83 S. W. 982.

*J. W. Blackwood* and *W. B. Smith,* for appellees.

There is no merit in the contention that the contract was prematurely let. The routine prescribed by the statute is not mandatory and this court has never so held; but it has has repeatedly held that the question of the kind of material to be used is left to the discretion of the commissioners unless the property owners limit the powers of the commissioners in the petition forming the district. It has also repeatedly held that the discretion of the commissioners will not be interfered with except for actual fraud. The Arkansas cases cited by appellants do not sustain their contention, and the Missouri cases are based upon statutes different from ours and those decisions are of no value here as precedents. 133 S. W. 1126.

Smith, J., (after stating the facts). To sustain their position, counsel for appellee cite the cases of *Jones* v. *Plummer,* 118 S. W. 109; *McCormick* v. *Moore,* 114 S. W. 42, and *Turner* v. *Springfield,* 93 S. W. 867, which are all Missouri cases, and hold that it is an essential prerequisite to a valid assessment that the plans and specifications shall have been filed with the city clerk by the city engineer when the contract is let. But these are cases construing the statutes of that State or the ordinances of cities therein enacted pursuant thereto, which are materially different from those of this State, in the procedure for the construction, and for the letting of contracts for the construction, of these improvements.

In the case of *McCormick* v. *Moore,* above cited, the court quoted section 877 of the ordinances of the common council of the city of Kansas City, which provides:

"*Before* advertising for bids for doing any work mentioned in the first section of this chapter, the city engineer shall make out detailed plans and specifications for the work to be done and keep the same on file in his office for the information of all desiring to bid on the work."

Thus it is seen that in the case cited the law provides the order of procedure and contains the express mandate that the plans provided by the city engineer shall be filed with the city clerk *before* advertising for bids.

The difficulty about applying the principle announced in the decisions of the courts of other States, construing statutes and ordinances on such subjects, as the one under consideration, is that they may contain provisions and directions that are essentially different from our own on the subject; and where that condition exists, these decisions of other courts are of no force here as precedents. *McDonnell* v. *Improvement Dist.*, 97 Ark. 339. Our statutes contain no express inhibition that the contract shall not be advertised and let before the assessments have been made, but is such inhibition necessarily implied? Appellant insists that it is, and cites the opinion of this court in the case of *Watkins* v. *Griffith*, 59 Ark. 349, as an authority to that effect. That was a case where a complaint had been filed to enjoin the collection of an assessment made by order of the city council to pay for an improvement along Louisiana Street in the city of Little Rock, under the provisions of the statute here considered. Special Judge MARTIN, speaking for the court, there said:

"The law enacted in pursuance of this constitutional provision provides for the following steps to be taken: First. Ten resident owners of real estate in the proposed district shall apply by petition for the formation of an improvement district. Second. The city council shall lay off the district. Third. A majority in value of the owners of real estate in said district shall present to the council a petition praying that such improvement be made, which petition shall designate the improvement to be undertaken. Fourth. The council thereupon appoints the board of improvement of the district. Fifth. The board is immediately to form plans and procure estimates of the cost of the 'improvements as prayed for.in the petition.' Sixth. The board reports plans and estimates to the city council. Seventh. The city council by ordinance shall assess the cost upon the real property in the district, and, if more than one per cent. of the value, shall provide for its payment by annual installments of one per cent. per each year. Eighth. The board is to go forward with the work, and may do it by contract, and may borrow money and pledge the assessments for payment. Ninth. If first assessment is not sufficient to complete the improvement, may have additional assessment levied by the council as at the first."

It is here insisted that the above-quoted opinion not only provides the things which are to be done in the establishment of an improvement district, but also provides the order in which they shall be done. It is agreed that the first, second, third and fourth steps were properly taken; and that thereafter the board selected its engineer and caused plans to be prepared by him, which they approved, calling for the submission of bids for the construction of the improvement with creosoted blocks or of asphalt. But the sixth and seventh steps have not yet been taken, wherefore appellant says the board's contract for improvement is void, and should be enjoined and cancelled.

The law does not require that the work shall be done by contract, but does provide that the improvement to be made shall be that petitioned for, and its cost must be estimated before the betterments can be assessed and the assessments made a lien upon the property of the district, by the city council. Section 5684 of Kirby's Digest provides a form in which this ordinance may be enacted, and in the preamble of this form is a recital of the estimated cost of the improvement. Of course, at the time of the enactment of this ordinance, the plans and specifications must not only have been reported to the city council, but must have been finally determined upon. And, further, before the enactment of this ordinance, the assessors must have been appointed and the assessment made and the fact determined and recited in the ordinance that the benefits received by each parcel of real estate assessed equals or exceeds the assessment thereon. And the ordinance then provides what per centum of this tax shall be paid and when it shall be paid.

Nothing has been done by the board in this case which contravenes this section or will interfere with its compliance.

The plans were so made that bids were secured on different kinds of paving, and there was had the competition, of not only the contractors engaged in the same character of work, but of those engaged in the different kinds of paving. It is necessarily true that the benefits to be received would largely depend on the kind of improvement to be made, and this competitive bidding gave the board an opportunity to choose

between the different kinds of paving after knowing exactly what each kind would cost.

The board can now report to the council its plans and the exact cost of their completion, and not a mere estimate which may be either excessive or insufficient. Section 5672 of Kirby's Digest provides that, immediately after their qualification, the board shall form plans for the improvement within their district as prayed in the petition. This the board appears to have done, or, at least, the issue is not made that the plans adopted by them are not in conformity with the petition for the creation of the district. And the same section provides that the board shall procure estimates of the cost of the work planned and an engineer may be employed for that purpose as was done here. If it shall finally appear to the council that the plans adopted by the board do not conform to the ordinance creating the district, the district is not bound by the board's action, as the petition of the land owners determines what improvement can be made. *Watkins* v. *Griffith,* 59 Ark. 354.

It is important to have this information as soon as the knowledge can be obtained, for one of the barriers erected by the law for the protection of the land owners is that no improvement shall be undertaken which alone will exceed in cost 20 per centum of the value of the real property in such district, as shown by the last county assessment. This limitation is absolute, and might under some circumstances lead to embarrassing conditions if the estimate proved to be too low, and particularly might such a condition arise if the board undertook to have the work done without a contract for its entire completion, as it might do under the law.

When these plans have been filed with the council and approved by it, the duty will then devolve upon the council to appoint three electors of the city, who shall constitute a board to assess the benefits to be received by each lot or parcel of land within said district, by reason of the proposed improvement. And when the assessment has been finally made and all, or any, appeals have been heard and passed upon by the city council, there may be then known exactly what per cent. of the benefits will be required to construct the improvement. The ordinance provided for in section 5684 of Kirby's Digest

in the form there given may be passed, and there will be exact information for all the recitals which it is required to contain.

Special Justice COCKRILL, speaking for the court in the case of *Kirst* v. *Improvement District*, 86 Ark. 21, said: "Whether the improvement can be made within this limit, (the 20 per-centum of the last county assessment, Kirby's Digest, § 5683), as to cost, can and must be ascertained at the outset. After the consent of a majority in value of the property holders has been obtained, and evidenced as required by law, the first step to be taken is the appointment of a board of improve-ment, which shall immediately form plans for the improvement and procure estimates of its cost. The cost being ascertained, its comparison with the value of the real property in the dis-trict, as shown by the last county assessment, will disclose whether it exceeds 20 percentum of that value, and, if it does the improvement should not be undertaken, unless the plans can be so changed as to reduce the cost within the statutory limit."

At this stage of the proceedings, it can not be known whether the cost of the improvement will exceed the aggregate of benefits in the district. The next step is to appoint a board of assessors to assess the benefits. If the costs exceed the benefits, it constitutes a second barrier to the improvement, for the assessment can only be made upon the benefits. The 20 percentum clause is a limitation upon the district alone, while the value of the benefits is both a limitation upon the district and upon the ultimate liability of the individual property owner." These two barriers for the protection of the land owner exist, whether any mere estimate the board may have made proves to be too low or not.

Appellant says that the board, without waiting for the approval of their plans, or the making of the assessment or the passage of the ordinance, levying the assessment, which alone can fix a lien on the property of the district, has gone ahead and made a contract which is premature, and which, unless its execution is enjoined and it declared void, will operate to fix a lien upon the lands of the district whether the subsequent proceedings to be taken would warrant the exe-cution of the contract or not. But such is not the case. There are certain conditions which the law reads into this contract,

and one of them is that the contract must conform to the petition of the land owners, and another is that the costs shall not exceed the benefits, and another is that the total cost of the improvement shall not exceed 20 percentum of the valuation assessed for the purpose of county taxation. See the two cases cited by appellant, *Watkins* v. *Griffith*, 59 Ark. 354; *Kirst* v. *Improvement District*, 86 Ark. 21.

And the Watkins case is authority for the statement that there can be no estoppel in the contractor's favor, if the subsequent proceedings in the creation of this improvement district fail to warrant the action already taken; and especially is that true here, as it was there, when protest was made before the construction of the improvement was begun.

There is no showing or contention that the contractor is about to proceed or threatens to proceed with the execution of his contract before those matters herein mentioned are determined, and which must be determined before his contract becomes binding on the district. If he was undertaking to tear up the street for his paving, or to impede the travel thereon, or to do anything which might make it expensive or troublesome to undo, then no doubt a restraining order might be proper until his rights were determined. Upon the other hand, the board in its answer sets up what it had done, and asks the court to determine the legality of its acts before it proceeds further, and, notwithstanding the injunction, prayed against it was refused by the chancellor more than a year ago, the board appears to be waiting until the questions here involved are decided, so far as the construction of the improvement is concerned.

In the case of *McDonnell* v. *Improvement District*, 97 Ark. 342, where it was sought to restrain the creation of an improvement district because the benefits were insufficient to authorize the improvement without the aid of certain contributions which had been promised by the city of Little Rock and the county of Pulaski, on the ground that the county and city were not legally bound to make the contributions and might not do so, it was said by Chief Justice McCulloch, that a court of equity would not interfere simply because of that possibility. So here we will not restrain the contractor and cancel his contract because it is possible that he may take some action

under it when there is no showing, or contention made, that he has any such intention.

It is not the purpose of this opinion to point out a procedure to be followed nor to commend the one here adopted. It may not generally be best to advertise the letting of a contract until the plans have been reported and the assessment made, nor possibly until the ordinance levying the assessment has been passed by the city council, and the procedure adopted here may not have been the wisest course to have pursued in this case. But the statutes under question are very general in their nature, and are intended to enable the cities and towns of the State to make the necessary local improvements; and it does not expressly appear that the Legislature has deprived the boards, which it has provided as the means of making these improvements, of all their discretion as to their procedure, and the courts can not do so. These boards have only the powers expressly granted, but they must act under many different circumstances, and their actions must be adjusted to meet the exigencies of each particular case and the sound discretion of the members of the board exercised, where this discretion is not controlled or denied by the Legislature; and the discretion to be exercised is that of the officer, who is familiar with the situation and performs the duty imposed upon him, and not that of the court which reviews his action.

Affirmed.