MORGAN ENGINEERING COMPANY *v.* CACHE RIVER DRAINAGE DISTRICT.

Opinion delivered November 30, 1914.

1. CONSTITUTIONAL LAW—STATUTE—OBLIGATION OF CONTRACT.—Under the Constitution the Legislature has not authority to pass an act which will impair the obligation of a contract already entered into.

2. DRAINAGE DISTRICTS—REPEAL OF ACT CREATING—CONTRACTS OF DIRECTORS—CONSTITUTIONAL LAW.—Act 119, Acts 1913, repealed Act June 2, 1911, creating a drainage district. Under the latter act the district had entered into a contract with certain engineers for work on the district, their compensation having been agreed upon. After some work was done the repealing act was passed, which act provided that "reasonable compensation" would be allowed claimants against the district, for services rendered. *Held,* the repealing act did not impair the obligation of the district in its contract with the engineers, and the term "reasonable compensation for services rendered," held to mean that the compensation of claimants was to be measured by the terms of its contract with the drainage district.

3. DRAINAGE DISTRICTS—COMPENSATION TO ENGINEER.—A drainage district entered into a contract with certain engineers to do certain work for which it agreed to pay 2 per cent of the estimated cost of the work. The act creating the district was then repealed by Act 119, Acts 1913. *Held,* the contract to pay 2 per cent of the estimated cost, when certain work was completed did not mean

that the engineers were absolutely entitled to that amount on the completion of the work, but that the contract only provided a time or mode of payment for services rendered by the engineers.

4. DRAINAGE DISTRICTS—REPEAL OF ACT CREATING—COMPENSATION FOR SERVICES.—Where the act creating an improvement district was repealed, it was the duty of the trial court to hear testimony as to the value of services rendered by a claimant who had done work for the district under a contract definitely fixing his compensation.

5. DRAINAGE DISTRICTS—CONTRACT FOR SERVICES—REPEAL.—Appellant entered into a contract to do certain engineering work for a certain consideration. *Held*, after the act creating the district was repealed he was entitled, for the work already done, to recover as compensation its proportionate value to the whole engineering service to have been done.

6. DRAINAGE DISTRICTS—LANDS OUTSIDE BOUNDARIES — SURVEYS. — A drainage district can not properly be charged for the cost of a survey outside the boundaries of the district as prescribed by the act creating it.

7. DRAINAGE DISTRICTS—LANDS OUTSIDE BOUNDARIES—OUTLET FOR WATER. —A drainage district may be charged with the cost of surveying an outlet for running water in the district, when the survey includes property outside the district.

8. DRAINAGE DISTRICTS—REPEAL OF ACT CREATING—JURISDICTION OF COUNTY COURT.—An act repealing an act creating a drainage district, is void insofar as it attempts to give the county court of one county jurisdiction to try and determine claims against the district, when the district comprised land in three counties.

9. APPEAL AND ERROR—JURISDICTION—REPEALING ACT.—An act repealing an act creating a drainage district made a void provision in attempting to confer jurisdiction upon the county court in one county in the district, *held*, where a claimant against the district and the district submitted themselves to the jurisdiction of the county court, and took an appeal therefrom in accordance with the provisions of the statute, they will be bound thereby on appeal.

Appeal from Craighead Circuit Court, Jonesboro District; *J. F. Gautney*, Judge; reversed.

*Allen Hughes*, for appellant.

1. The court erred in limiting appellant's recovery to the sum of $14,665.28, the undisputed evidence showing that it is entitled to recover $17,082.48, being the face of the warrants in evidence, with interest thereon for one and one-half years.

Construing together all the provisions of sections 5 and 19 of the act creating the drainage district, all plans and surveys are to be made by the engineer under the supervision of the board of directors, and this power includes the power to prepare and give to the assessors the data necessary to enable them to discharge the duties devolved upon them in reference to the extensions of boundary.

2. The General Assembly can pass no law impairing the obligations of a contract. If the repealing act is construed as having the effect to limit the recovery here to what a jury may say is *reasonable,* without reference to what the *contract* provides, then the act to that extent is unconstitutional. 115 U. S. 566-574; 103 U. S. 4-10; 116 U. S. 131; Cooley, Const. Limitations (7 ed.), 411; 36 N. E. 771; 27 O. St. 426; 49 Ark. 190; 33 Ark. 81; 57 Fed. 1030.

This contention does not seek to strike down the repealing act. The provision we complain of is really an unnecessary part of the act. It seeks, if appellee's construction is correct, to prescribe the rule by which the judicial department shall determine rights already vested. The General Assembly could not do that, and if it has attempted to do so, the effect is incidental only.

*Hawthorne & Hawthorne,* for appellee.

Without doubt, the Legislature had the power to repeal the act creating the drainage district. By the passage of the repealing act it did not impair, nor seek to impair, the obligation of appellant's contract. It repealed the law under which the contract was made, but if it failed to provide a remedy or a forum in which appellant could enforce its contract, this court has no power to interpolate a remedy for it in the statute. Appellant must accept the terms of the statute and recover compensation for its services, or wait until such time as the Legislature may provide a remedy under which to enforce the contract. This court can not afford the relief asked for under the contract without invading the province of

the Legislature and interpolating provisions in the act which were not contemplated by the Legislature. 102 U. S. 472; 19 Wall. 107.

HART, J.   Both the Morgan Engineering Company, hereinafter called the engineering company, and the Cache River Drainage District, hereinafter called the drainage district, have appealed from a judgment of the circuit court allowing a claim of the engineering company against the drainage district.   The facts are as follows:

The Cache River Drainage District was created by a special act of the Legislature, approved June 2, 1911.   It included within its boundaries parts of Craighead, Jackson and Lawrence counties. . See Special Acts, 1911, page 1245.   The first section of the act specifically and definitely described the boundaries of the drainage district; section 2 provided for a board of directors for the drainage district, whose duty it was to carry into effect the provisions of the act; section 5 provided for the appointment of a chief engineer by the board of directors, and stated the duties that were to be performed by him; other sections of the act provided that, in order to obtain a proper outlet for the drainage system, the directors might construct ditches or do other work beyond the boundaries of the district, so as to carry the water to some running stream or proper outlet.

The board of directors made a contract with the engineering company to furnish all engineering services required in making the surveys and constructing the ditches provided for under the act.   It agreed to pay them therefor five and one-half per cent of the estimated cost of the construction.   The contract provided that when the full work on which the plans were based was completed, and the plans and specifications completed and filed with the district, the district should pay to the engineering company 2 per cent of the estimated cost of the work. The remaining 3½ per cent was to be paid at a later time, designated by the contract.

The engineering company, with the consent of the board of directors of the drainage district, surveyed cer-

tain lands which lie outside of the boundaries of the district as set forth in the act creating it. This extra territory was included in order to give drainage to that territory, and also to foretell how the water from that territory would reach the district. The survey was made in order to give relief to the territory surveyed outside of the district, it being the intention of the board to embrace that territory in the district by proper orders to be made by the court, under the terms of the act, at a later date.

An estimate was made of the cost of the construction of the whole system, including that part to be added, and it is claimed by the engineering company that it is entitled under its contract to 2 per cent of that amount.

In 1913 the General Assembly of the State of Arkansas repealed the act creating the drainage district above referred to. See Act 119, Acts of 1913, p. 512. The repealing act reads as follows:

"Section 1. That the act to create the Cache River Drainage District, approved June 2, 1911, is hereby repealed.

"Section 2. All persons having claims against the Cache River Drainage District shall file the same with the county court of Craighead County within one year from the passage of this act, and upon filing such claim twenty days before the commencement of any term of court within one year, it shall be the duty of the county court to ascertain the extent and value of the services which were rendered the Cache River Drainage District, and to allow such claimant or his assignee reasonable compensation for such services rendered, and shall transmit to the respective county courts of Lawrence and Jackson counties certified copies of its proceedings, and it shall then be the duty of the respective county courts to extend said amounts *pro rata* according to acreage against the lands, found to be benefited by the proposed improvements as shown by the survey and assessment lists now on file in the office of the circuit clerk of Craighead County, in the respective counties, which sums shall be extended and placed upon the tax books of the respective

counties and collected by the collector thereof as other taxes are collected, and paid over to the treasurer of Craighead County, and by him paid to the respective claimants or their assignees in the order in which the judgments are rendered; provided, that as to certificates of indebtedness, or warrants, heretofore cashed by the treasurer, they shall be payable, principal and interest, as stated on their face. Provided, that any land holder within said district may appear at any time before the allowance of any claim and make himself a party to said proceedings and contest the same both as to the amount and the liability of the drainage district for such services, and when such intervention is filed it shall be the duty of the county court to hear and determine the amount due and render a judgment therefor, from which either party may appeal at any time within six months as is now provided by law for appealing from judgments and orders of the county court. Upon appeal, the case shall be tried and disposed of as common law cases are usually disposed of. Provided, further, that if any persons shall intervene and contest the allowance of any claim, they shall be liable for cost—if the claim is allowed—for the amount demanded, and if the claim is not allowed for the amount demanded, the cost shall be borne by the persons presenting such claims.

"Section 3. This act shall take effect and be enforced ninety days after its passage."

The claim of the engineering company was presented to the county court in compliance with the terms of the repealing act just quoted and from the judgment rendered by the county court the engineering company duly prosecuted an appeal to the circuit court, and in the circuit court the cause was tried before a jury. At the conclusion of the evidence the court gave to the jury the following instruction: "You are instructed that the plaintiff is entitled to recover for services rendered under said contract at the rate of 2 per cent of the estimated cost of the construction of all of the drainage work provided for in said district, and that the undisputed evidence shows that

the estimated cost of construction is $1,224,000. From this sum you will deduct the estimated cost of the construction of the drainage work on the north of said district for lands not included within the original district as formed by the act of the Legislature, and also the estimated cost of construction of drainage work on the southeast of lands not included within the original drainage district as provided by the acts of the Legislature, and from this amount as finally ascertained, deduct the amount which the drainage district has paid to the plaintiff company in cash, and render your verdict accordingly. You will, therefore, return a verdict in favor of plaintiff for $13,-455.40, with interest thereon at the rate of 6 per cent per annum from October 10, 1912, to date.''

The jury returned a verdict in conformity with the direction of the court and judgment entered upon the verdict. As we have already stated, both parties have appealed from the judgment. It is the contention of the drainage district that under the terms of the repealing act, the engineering company could recover only such compensation as the jury might find reasonable; on the other hand, the engineering company contends that its compensation should be measured by the terms of the contract, and that having done all of the preliminary work required under the act, it was entitled to recover from the drainage district 2 per cent of the estimated cost of construction of the whole work. We do not agree with the contention of either party.

(1) It is well settled under our Constitution that the Legislature may not pass an act impairing the obligation of a contract. The board of directors of the drainage district made a valid and binding contract with the engineering company to furnish all the engineering services that would be required in the preliminary surveys and also for the construction of the ditches required under the terms of the act. Any law passed by the Legislature, the effect of which would be to impair the binding force of this contract, would be contrary to the Constitution, and void. We have copied the act repealing the

drainage district so that its terms appear in full, and are of the opinion that when the act is construed it does not mean to impair the obligation of any valid contract which had already been entered into by the board, and which had been in whole or in part performed.

(2) The act provided that it shall be the duty of the county court to ascertain the extent or value of the services which were rendered the drainage district and to allow such claimant, or his assignee, reasonable compensation for such services. The Legislature, in passing the act, no doubt, had in mind that the board had made the contract in question as well as other contracts under the terms of the original act, and that services had been performed under these contracts. It must have intended, then, by the term ''reasonable compensation for such services rendered,'' to mean such compensation as was provided in valid contracts which had been made by the board of directors of the drainage district. Under the act, ''reasonable compensation for services rendered,'' did not mean that proof was to be taken of the amount and value of the services rendered, and that judgment be rendered against the drainage district on that basis, but we think the repealing act meant that the compensation of the claimant was to be measured by the terms of his contract with the drainage district, if he had any valid contract with it.

(3) On the other hand, we do not think that the provision of the act that the engineering company should be paid 2 per cent of the estimated cost of the work when the full work on which the plans were based was completed, and the plans and specifications were completed and filed with the district, meant that they were entitled to that amount absolutely on the performance of that work, but we think it only provided a time or mode of payment for services rendered by the engineering company.

The contract made by the drainage district with the engineering company contemplated that the engineering company should furnish all the engineering services nec-

essary for the preliminary surveys, and also for the construction of the whole work, and we are of the opinion that the payment of 2 per cent only provided a method of payment, and did not mean that 2 per cent was the measure of the value of the services which had been performed at the time the payment was to be made. The contract provided for a gross sum of 5½ per cent to be paid the engineering company for the whole service to be performed by it, including the construction of the improvement.

(4-5) The Legislature had a right to repeal the act creating the drainage district, and, as we have already seen, it provided a tribunal for parties who had claims against the district in which to present their claims, and have them adjudged according to the terms of their contract with the drainage district. Therefore the court should have taken proof of the value of the services under the contract which had been performed by the engineering company at the time the repealing act was passed, and should have found for the engineering company for that amount. That is to say, by the terms of the contract, the engineering company was to receive 5½ per cent of the estimated cost of the construction of the work as its compensation. And for the work already done, it was entitled to recover as compensation its proportionate value to the whole engineering service to be furnished. For example, if the evidence should show that the work done by the engineering company at the time the repealing act was passed amounted to one-fourth of all the service it would have been required to perform had the improvement been constructed, then it would be entitled to recover one-fourth of 5½ per cent of the estimated cost of construction of the work as provided for in the original act.

(6) It will be noted that the court held that the land which was not embraced in the boundaries of the district as prescribed by the original act could not be taken into consideration in fixing the compensation due the engineering company. In this the court was correct. Neither the board nor the engineering company had a right to go out

and make surveys of land which had not been properly included within the drainage district and charge the drainage district for engineering services in doing something which, under the terms of the act, it had no legal authority to do.

(7)    Under the terms of the act, however, an outlet to some running stream was contemplated, and for services in surveying and providing for that outlet, the engineering company did have a right to receive compensation.

It follows from the views we have expressed that the court erred in its instruction to the jury, and for that error the judgment will be reversed and the cause remanded for further proceedings in accordance with this opinion.

### ON REHEARING.

HART, J.    Both parties to this suit have filed a motion for a rehearing.

Counsel for the appellant with much force insists that his motion for a rehearing should be granted, but the arguments presented by him are essentially the same as made by him in his former brief, and his petition is overruled for the reasons given in our former opinion.

It is insisted by counsel for appellee that the county court being a court of limited jurisdiction, the act of the Legislature of 1913, at page 512, Act 119, of the Acts of 1913, repealing the act creating the Cache River Drainage District, in so far as it attempted to confer jurisdiction upon the county court of Craighead County to try and determine the claims against the Cache River Drainage District, was void.

In support of their contention, they have cited the case of the *Grassy Slough Drainage District No.* 1 v. *National Box Co.,* 111 Ark. 144.

The Cache River Drainage District embraced territory in the counties of Craighead, Lawrence and Jackson, and for this reason claims arising against the district were not matters of local concern over which the county court of Craighead County might be given jurisdiction.

(8-9)   Therefore, we think the repealing act of 1913 was void in so far as it attempted to give to the county court of Craighead County jurisdiction over the claims against the district. Section 11, article 7, of our Constitution provides that the circuit court shall have jurisdiction in all civil and criminal cases, exclusive jurisdiction of which may not be vested in some other court provided by the Constitution. Under this section, the circuit court had jurisdiction of the claims against the district. But the repealing act of 1913 provided that all parties having claims against the district should file the same with the county court of Craighead County. The act also provided that any land holder of the district might make himself a party to the proceeding and contest the allowance of the claims. It was further provided that either party might appeal to the circuit court. As we have already seen, these provisions were void in so far as they confer jurisdiction as a court upon the county court of Craighead County. But they were valid as creating a tribunal in the nature of a board of arbitration. Though neither the claimants against the district nor the land owners could be compelled to submit themselves to the jurisdiction of the county court of Craighead County, and might have moved to dismiss the claims on account of the county court not having jurisdiction, yet having entered their appearance and voluntarily submitted themselves to the tribunal, they will be held to have appeared there for the purpose of submitting themselves to the county court as a court of arbitration and, having elected to do this, they can not now object that the county court was without jurisdiction in the matter. Having elected to submit themselves to the jurisdiction of the tribunal provided by the statute and having taken an appeal in accordance with the provisions of the statute, they must abide the result of their own voluntary action.

The motion for a rehearing will be denied.