BOWMAN ENGINEERING COMPANY v. ARKANSAS AND MISSOURI HIGHWAY DISTRICT.

## Opinion delivered December 12, 1921.

1. EQUITY—JURISDICTION TO WIND UP AFFAIRS OF HIGHWAY DISTRICT.—Act of February 17, 1921, repealing prior acts creating a highway district in Jackson County, and providing that jurisdiction be conferred on the Jackson Chancery Court to wind up the affairs of such district, is constitutional, under the general power of chancery courts to enforce liens on real estate.

2. APPEAL AND ERROR—PRESUMPTION FROM SILENCE OF ABSTRACT.—On appeal from an order of the chancery court allowing the fees and expenses of the commissioners of a highway improvement district, where the testimony on that phase of the case is not abstracted, it will be presumed that the decision thereon was correct.

3. HIGHWAYS—IMPROVEMENT DISTRICT—AUTHORITY OF COMMISSION-ERS.—The commissioners of a highway improvement district are authorized to contract for certain preliminary work before the assessment of benefits has been made, and such contracts are valid unless found to be improvident and unreasonable. Thus, they may employ an assessor to make the assessment of benefits, and may employ engineers to prepare the plans and to do other engineering work.

4. HIGHWAYS—IMPROVEMENT DISTRICT—AUTHORITY OF COMMISSION-ERS TO MAKE CONTRACTS.—Where a contract was made by the commisioners of a highway improvement district with engineers to do all the engineering work in connection with that project, and an assessment of benefits was made which showed benefits in excess of the cost, and the engineers performed a substantial part of the work before the act creating the district was repealed, the engineers are entitled to recover the proportionate amount of the consideration earned under the contract.

Appeal from Jackson Chancery Court; *Lyman F. Reeder,* Chancellor; reversed.

*Jno. W. & Jos. M. Stayton,* for appellants.

1. The chancery court had jurisdiction. § 11, art. 7, Const.; C. & M. Dig. § 2184; 95 Ark. 620. The remedy at law was inadequate. 32 Ark. 489. The suit was proper in equity to avoid circuity of action. 21 C. J. § 52, p. 82. See also act 82, Acts 1919, § 17. The chancery court has original jurisdiction where lands are charged for the payment of debts.

2. The uncontradicted evidence shows that the commissioners of the district employed Bowman Engineering Company to do all of the engineering work; that the latter did all of such work up to the point where actual construction work was to begin; that the work was performed in a satisfactory manner, and that the amount thereof was 40 per cent. to 50 per cent. of the whole work covered by the contract. It is not disputed that the dis-

trict was legally formed, and that the assessed benefits were in excess of the total estimated cost of construction. 115 Ark. 437; *Gould* v. *Toland,* 232 S. W. (Ark.) 434; 106 Ark. 39; 119 *Id.* 188; 127 *Id.* 1. The court should have followed the rule laid down in the Morgan Engineering Company case, 115 Ark. 437. As to how far a court of equity may go in canceling a contract as "improvident," for inadequacy of price, etc., see Pomeroy, Equity, 4th Ed., § 926; 86 Ark. 460. The inadequacy must be so gross as to shock the conscience and furnish decided evidence of fraud, before there is sufficient reason for canceling the contract. Pomeroy, Equity, § 927; 1 Brown C. A. 1, 9.

3. The compensation which the commissioners agreed to pay J. W. Nicholson for his services as assessor was not improvident, there was no competent evidence to show that it was excessive or exorbitant, and the court erred in so holding.

*Gustave Jones* and *Mehaffy, Donham & Mehaffy,* for appellees.

The sum of five thousand dollars allowed as compensation to the attorneys is excessive, and too exorbitant a demand upon the taxpayers. 143 Ark. 453; 122 Ark. 14, 22. The rule laid down in this case, 143 Ark. 453, with reference to the employment of attorneys applies also to the employment of engineers.

The claims of the commissioners aside from Mr. Van Dyke, as allowed, are exorbitant, and not in accordance with the act for their compensation, § 2, act, which provides that their compensation be fixed by the county court, which was never done. Mr. Van Dyke, who was as active and attentive as either of the other two, claims only $200.

Chancery is not a common-law court. 2 Ark. 334; *Id.* 369; *Id.* 461; 12 *Id.* 131; 14 *Id.* 21. Having created chancery courts, the Legislature is without power to enlarge or diminish their jurisdiction. 95 Ark. 618; 95 *Id.* 389,

399; 80 *Id.* 185; 116 *Id.* 490, 493; 109 *Id.* 250. Therefore, that part of the repealing act which attempts to impose a tax for expenses is void.

McCulloch, C. J.    The Arkansas and Missouri Highway District in Jackson County was created by a special act of the General Assembly of the year 1919 (Vol. 1 Road Acts, 1919, p. 134), the purpose being to construct a road a little over 44 miles in length through Jackson County as a part of a continuous highway through Arkansas and Missouri. The statute named the commissioners and conferred power on them to appoint an engineer, attorneys, agents and servants and an assessor to assess the benefits and to select the route of the road, issue bonds, levy assessments and complete the improvement of the road in accordance with the design of the statute. The statute contained a provision that if "for any reason the improvements herein authorized and directed * * * * shall not be made, all expenses and costs accrued to that time shall be charged against the real property in the district," etc.

The commissioners appointed appellant, Bowman Engineering Company, a co-partnership composed of W. A. Bowman and C. B. Ford, as engineers and entered into a written contract whereby said appellants undertook to do the engineering work for the district and were to be paid as compensation for their services 5% of the actual construction costs of the improvement not exceeding $1,000,000, and 4% on the cost of construction over $1,000,000, 40% of the entire fee to be paid when the construction contract was let. Subsequently the contract was amended so as to reduce the fee of the engineers to 4½% of the cost of the actual construction. In this contract said appellants agreed to do all the engineering work connected with the construction and improvement, to make the preliminary plans and supplement the plans of the Highway Department, make final plans, supervise the construction work, furnish estimates on the work done from time to time, and to do everything else in connection with the engineering

work of the district, and to assist the assessor in making the assessment of benefits. The contract further provided that it "shall not take effect until second party has furnished first party a good bond in the sum of not less than $1,000 for contracts of $50,000 or under; 2% on construction contracts of $50,000 to $100,000; 1½% on construction contracts of $100,000 to $200,000; 1% on construction contracts of $200,000 or over, with sureties to be approved by the first party and the State highway department, conditioned that second party shall well and truly discharge the duties of this contract, and promptly repay to first party any advance or overpayment that may be made to second party." Bond was given under this clause of the contract. Other matters were specifically mentioned in the contract, but it is unnecessary to enumerate all the duties imposed upon the engineers by this contract.

The preliminary surveys were made by the engineers, as well as the final plans and specifications and estimates of the costs of the work in detail.

The commissioners appointed appellant J. W. Nicholson as assessor and agreed to pay him the sum of $2,500 as compensation for his services. The assessment was made by said assessor with the assistance of the engineers, and a list of the assessments was reported to the commissioners and was approved, and on February 5, 1920, there was a special statute enacted at the extraordinary session of the General Assembly, confirming the assessments as thus made. The letting of the contract for the construction of the work was thereafter advertised, and the engineers performed all of their services with respect to this part of the proceeding. The bidders submitted their bids on the advertised date, but for some reason the contract was not let, though the lowest bid was accepted and the amount was within the assessment of benefits. All further proceedings were held in abeyance and nothing further was done until the General Assembly convened

in the regular session of 1921, and a special act was passed repealing the law creating the district and directing that the affairs of the district be wound up in the chancery court of Jackson County, and that the liabilities of the district be adjudicated and paid from the collection of assessments on the benefits on the real property in the district. The present proceedings were taken under this statute, and the claims involved on this appeal were filed for allowance. The engineers filed a claim for 1.7 per centum of the estimated cost of the improvement, making $17,434.92 and interest from March 1, 1920, to date of payment. Appellant J. W. Nicholson filed his claim for an unpaid balance of $1,250 on the contract price of his services as assessor, having already been paid $1,250 by the commissioners. The attorney for the district also filed his claim for services under his contract of employment with the commissioners, and the commissioners themselves filed their respective claims for services and expenses. There were doubtless other claims presented, but only those enumerated above were contested, and the procedings concerning the uncontested claims were not brought into the record, so far as shown by the abstract. Certain citizens and taxpayers in the district intervened, contesting the validity of the claims above enumerated.

The cause was heard by the court on the testimony of witnesses and documentary evidence, and a decree was rendered, fixing the fees of the engineers at $4,000, and fixing the fee of the assessor at $1,250, the amount already paid to him. The fees of the attorney were also fixed by the court, and the fees of the commissioners. An appeal has been prosecuted by the Bowman Engineering Company and Mr. Nicholson from those parts of the decree that affect their respective claims, and the remonstrants appealed from that part of the decree fixing the fees and expenses of the commissioners. There has been no appeal from that part of the decree which fixed the fees of the attorney of the district.

It is contended, in the first place, by counsel for appellees, that it was beyond the power of the Legislature to confer jurisdiction on the chancery court, and that the statute undertaking to do so is void. Similar statutes have been enforced by this court without question raised as to their validity. *Thibault* v. *McHaney,* 119 Ark. 188; *Sain* v. *Bogle,* 122 Ark. 14. This power could rightfully be conferred as part of the general jurisdiction of chancery courts over the enforcement of liens on real estate, and it is unnecessary to search for further grounds for conferring this jurisdiction. *Murray* v. *Rapley,* 30 Ark. 568; *Lane* v *Hallum,* 38 Ark. 385; *Kizer Lumber Co.* v. *Mosley,* 56 Ark. 544.

The appeal of the remonstrants from that part of the decree which relates to the fees and expenses of the commissioners may be disposed of by referring to the fact that no attempt has been made to abstract the testimony, and we are unable to determine from the abstract whether the fees were properly allowed or not, and must assume that the chancery court's decision on this subject was within the principles of law announced by this court in the recent case of *Gould* v. *Toland,* 149 Ark. 476.

The chancery court decided that the contracts between the district and the engineers and the assessor, respectively, were void, and that they could only recover on a *quantum meruit* for the services performed. The court was wrong in this conclusion.

It was within the power of the commissioners to make contracts for preliminary work. We perceive no reason why this should not be so, for the statute conferred authority on the commissioners to do whatever was necessary to cary out the expressed design of the lawmakers in enacting the statute. The preliminary work precedes, of course, all permanent work and is essential before it can be known whether or not the permanent work can be proceeded with. The statute

creating the district clothed the commissioners with power to have the preliminary work done, and this necessarily implied the power to make a contract with reference to the doing of this work. There is little reason for holding that the power of the commissioners is limited to making contracts concerning permanent work, for preliminary work is just as essential. The only difference is that the contract for preliminary work may be made in the beginning, whereas the contract for permanent work must be made, or at least must take effect, after it is ascertained that the permanent work can be done within the limits of the assessment of benefits. The assessment work was preliminary in order to determine the amount of benefits, and the contract with the assessor for doing that work was within the power of the commissioners, and the contract was valid unless it is found to be improvident and unreasonable. That question will be discussed later when we come to review the evidence in the case.

There was no separate contract with the engineers for the preliminary work, but the contract was one for the performance of all engineering work, both preliminary and permanent. We have decided in several cases that a contract for permanent work is premature and ineffective until it is determined, as a preliminary matter, what the estimated cost of the improvement will be and what the benefits will amount to, so that it can be seen that the cost will not exceed the benefits. *Cherry* v. *Bowman,* 106 Ark. 39; *Thibault* v. *McHaney, supra; Gould* v. *Toland, supra.* We said in *Thibault* v. *McHaney, supra,* referring to *Cherry* v. *Bowman,* that under authority of that case a tentative contract might be entered into for permanent work in advance of the assessments of benefits, yet such contract would not be operative and binding on the district until there has been an assessment of benefits. In *Gould* v. *Toland* we said that the premature contract for permanent construction remained in abeyance and did not become effective until the assessment of

benefits had been made for the purpose of ascertaining whether the cost of the improvement would exceed in value the assessment of benefits. None of the cases referred to decide whether or not it is within the power of the commissioners to withdraw from a tentative contract before it becomes effective, and it is unnecessary to do so in the present case, nor do those cases decide just what is necessary to make the contract effective. We think, however, that it follows necessarily from those decisions that there must be a distinct recognition in some form of the existence of the prematurely made contract after the time comes for it to be made effective; in other words, when it is determined that the total cost of the improvement will not exceed the benefits. In the present case there was an assessment showing benefits in excess of the estimated cost of the improvement, and therefore it was within the power of the commissioners to make the contract. The evidence shows that, after the assessments were completed and approved, the contract was treated as being in effect, and proceedings were taken thereunder looking to the construction of the permanent work. The engineers performed a substantial part of the contract in supervising the work of advertising and receiving bids for the letting of the contract. The case differs in this respect from *Thibault* v. *McHaney,* and *Gould* v. *Toland, supra,* in that the facts in those cases were that there was never any assessments of benefits, and the time never came for the contract to become effective. The circumstances in this case bring it directly within the rule in *Morgan Engineering Co.* v. *Cache River Drainage District,* 115 Ark. 437, where the contract for the whole of the engineering work was made in advance, as in the present case, and some of the permanent work was done thereunder. We decided in that case that the contract was valid, and that the obligations thereof could not be impaired by subsequent legislation, so far as concerned the payment of earned compensation for work done under the contract. The claims made in the

present case are limited to earned compensation under the contract, and we have nothing else to deal with. This contract, as before stated, was one for the whole engineering work, and not a separate contract for each particular work. There was a provision for payment of 40 per centum of the fee as soon as the contract for construction was entered into, but this did not separate the contract, but only constituted a specification of time for payment. *Morgan Eng. Co.* v. *Cache River Drain. Dist., supra; Gould* v. *Toland, supra.*

It follows, therefore, that appellant engineers were entitled to recover compensation, not only on the *quantum meruit,* but for the proportionate earned contract price. Such was the effect of our decisions in the case just cited, *Morgan Engineering Co.* v. *Cache River Drain. Dist., supra.* There is nothing in our decision in the case of *Sain* v. *Bogle, supra,* which militates against this view. In that case the drainage district was dissolved by special act of the Legislature, and there was a contest in the chancery court over the fees of the attorneys and engineers, and we decided that, under the proof, the allowances made by the chancellor were excessive. We determined from the evidence what was a reasonable fee for the attorneys, and, as we found that the evidence related, in part, to compensation to the engineers for work for which they were not entitled to charge, we remanded the cause for further proof limited to compensation only for work which the engineers could legally charge against the district.

We have said that contracts made by the commissioners with the assessor for the amount of fee must be reasonable in order to be valid and binding. The commissioners have power to make contracts, but they are trustees of the property owners and can only make reasonable ones. The owners of the property have a right to challenge the validity of such contracts by showing that they are unreasonable. Of course, in testing the validity of such contracts, the court should not substitute its

own judgment primarily for that of the commissioners, the authority to make the contract being lodged by the lawmakers in the commissioners, but the inquiry of the court is to determine whether or not the contract is so improvident as to demonstrate its unreasonableness.

Proof was taken in the present case to show whether or not the contracts with the engineers and assessor were unreasonable. The contract with the engineers was for the payment of $4\frac{1}{4}$ per centum of the actual cost of construction, and considerable of the testimony was adduced to show that this contract was reasonable. Three engineers, who were not shown to be interested in any direct manner in the present litigation, testified that the customary contracts in this State for such services were 5 per centum of the total cost of construction, and that the custom in most of the other States was even a higher rate of percentage as compensation. The engineers themselves testified concerning the value of their services and what was done under the contract. The only testimony on the other side was concerning the amount paid for engineering services in two or three other districts, much smaller than the one involved now.

It appears to us that the testimony was clearly preponderating in favor of the reasonableness of this contract, and there is very little in the evidence to the contrary. We see no reason for disregarding the testimony of men who know, or pretend to know, the value of such services and are conversant with the particular work done under such contracts.

The same may be said with respect to the contract with the assessor. He testified himself concerning the amount of work done, and there was other testimony on that subject which corroborated his statement and tended to show that the contract was reasonable. The only testimony against it is that which shows the salary or emolument of the assessor of Jackson County, which is not necessarily a criterion for determining the value of

services in the assessment of benefits from local improvements. Our conclusion is that the preponderance of the testimony is in favor, also, of the reasonableness of the contract with the assessor, and there is no reason for setting it aside; and, since the assessor has performed the whole of the contract, he is entitled to the full contract price.

The question now arises as to what should be the proportionate allowance for the engineers. Each of the two engineers was introduced as a witness and testified fully as to the work done under the contract. They detailed what was done, the number of men engaged, length of time and the actual expenses of doing the work. It appears from this testimony that both of the engineers gave their personal services, and that they had a crew of about nine men engaged in the work making the survey. They maintained an office, where the office work pursuant to this contract and others which they had at the same time was conducted. In the testimony of one of the engineers there is presented an itemized account of the expenses, which aggregated the sum of $12,697, and which included the salary of Mr. Bowman for seven months at $300 a month, and the salary of Mr. Ford at $250 per month, also the sum of $3,600 for profits or compensation of the firm during the period of 12 months. The testimony showed that they were engaged in the work and were holding themselves in readiness for the work a much longer time. The three engineers who were introduced as expert witnesses gave their opinions as to the proportionate amount earned under the contract. Two of them said that the engineering work done up to the time of the letting of the contract was 50 per centum of the whole work, the work up to that time being creative and after that time supervisory. One of the engineers testified that from 40 to 50 per centum would be the proper proportion. The claim of the engineers, as presented for allowance, is for 40 per centum of the contract price.

While we think that the testimony establishes the reasonableness and validity of the contract as a whole, it is not clear from the testimony in this particular instance that the engineers earned a per centum of 40 per cent. for the proportionate amount of work done. The fact that the engineers themselves made out an account of the actual expenses, showing that those expenses amounted to only $5,247 and that the remainder is an allowance as compensation for their services, is, we think, an emphatic statement that such is a reasonable proportionate compensation for the work done. Of course, the engineers are entitled to their profits on the proportionate part of the work done under the contract and are not limited to actual salary which would be paid to those engaged in doing such work, but here we have incorporated in this statement what was evidently their idea of a reasonable salary and also of the reasonable profits to go to the copartnership. In addition to that, there is another feature of the testimony which is quite significant in determining the proportionate value of these services. Mr. Ford testified that they were enabled to do the preliminary part of the work at a lower price because of the familiarity previously acquired by each of the engineers as to the land in the district, the topography of the locality, and also the fact that they had the field notes in their office, from which information could be gained and with which they were already familiar. He testified that on that account they made a deduction of three-fourths per centum from the original contract price. Now, this demonstrates beyond conjecture that the preliminary, or, as the engineers term it, the creative part of the work was subject to reduction in this particular instance of three-fourths of one per centum of the contract price. When this is deducted from the 40 per centum, it leaves substantially the sum shown by the appellant engineers in their estimate of cost of the improvement. In other words, to be exact in the figures, this deduction of three-fourths of one per centum from

the 40 per centum presented by appellants in their claim reduces it to the sum of $12,822.

We are therefore of the opinion that, taking the testimony as a whole, and giving each part due credence, the account made out by the engineers showing actual cost of construction at the sum of $5,247, and compensation to the members of the firm individually and to the copartnership of $7,450, making a total of $12,-697, is the proper proportionate amount which they should be allowed under the contract.

Something must be said with respect to the claim of the engineers for interest on their account. They are entitled to recover, as we have said, on the contract, but the amount is not liquidated and has to be ascertained from the evidence. Under the contract the first payment of 40 per centum was to be made "when the construction contract is let." It appears from the evidence that the contract was never let, and that the Legislature, in the repealing statute subsequently enacted, adopted another procedure for compensation under the contract. This procedure was by the adjustment of the amounts in the chancery court. There was therefore no fixed time for the payment of the claim from which interest could be computed, and we are of the opinion that no interest is properly chargeable in favor of the claimants.

The decree is therefore reversed on the appeal of the Bowman Engineering Company and J. W. Nicholson, and the cause remanded with directions to enter a decree in favor of Bowman Engineering Company for the sum of $12,697 with costs, and in favor of appellant J. W. Nicholson for the sum of $1,250 with costs, in addition to the amount already paid to him. It is so ordered.

HART, J. (dissenting). If the interpretation now placed upon the opinion in *Morgan Engineering Co.* v. *Cache River Drainage District,* 115 Ark. 437, is to be considered correct, Judge WOOD and myself believe that

the contract in the instant case is in nowise like the contract in that case. and that the majority opinion is wrong in so holding. The contract in the instant case is somewhat long, but we believe it is necessary to set out the following:

"The compensation of second party shall be, an amount equal to 5 per centum of the actual construction cost of all the improvements made by first party not exceeding in cost $1,000,000, and 4 per centum on all such costs in excess of $1,000,000, to be paid as follows: 40 per centum of the entire fee to be paid when the construction contract is let, or, if more than one construction contract is let, the proportionate part of said 40 per centum represented by the contracts that are let. The balance of said compensation is to be paid in installments by first party to second party at the same times and in the same proportions that cash on estimates is paid to the contractor or respective contractors. If for any reason the letting of contracts is delayed beyond 90 days from the completing of the final plans, then first party shall make arrangements to secure funds and pay second party as a partial payment the costs that they have been put to for the preliminary surveys and preliminary plans made to that time, including compensation to second party at the rate of $200 a month from the date of this contract to the time the construction contract is let, and when such contract or contracts are let then party of second part will be paid 40 per cent. of entire fee that date, less all amounts paid to second party to that date of such settlement. The first party agrees to pay said compensation as herein set forth."

"Seventh. This contract shall not take effect until second party has furnished first party a good bond in the sum of not less than $1,000 for contracts of $50,000 or under; 2 per cent. of construction contracts of $50,000 to $100,000; 1½ per centum on construction contracts of $100,000 to $200,000; 1 per centum on construction contracts of $200,000 or over, with sureties to

be approved by the first party and the State Highway Department, conditioned that second party shall well and truly discharge the duties of this contract, and promptly repay to first party any advance or overpayment that may be made to second party.''

There is a clause dealing with the compensation to be paid the engineers. The language used here is 40 per centum of the entire fee to be paid when the construction contract is let. The balance of said compensation is to be paid in installments at the same time and in the same proportion that cash or estimates is paid to the contractor.

The contract then provides that, if for any reason the letting of construction contracts is delayed beyond 90 days from the completing of the final plans, the engineers shall be paid their expenses for preliminary plans and $200 per month from the date of the contract to the time the construction contract is let. Thus we see that the contract provides a detailed and definite method by which payments were to be made to the engineers.

The seventh section deals with a wholly different matter. It in plain terms says that the contract shall not take effect until the engineers have furnished a bond or bonds, the amounts of which are dependent upon the size of the construction contracts. The language is too plain for judicial construction, and if it does not mean that the contracts of the commissioners with the engineers is not to take effect until a contract or contracts for the construction of the road has been let, it is difficult to perceive how language to accomplish that purpose could have been used. It must be conceded that it was a wise and expedient precaution for the commissioners to take; for it may be readily seen that many unforeseen things might occur which would prevent the construction of the road. One of these was that litigation looking to the dissolution of the district was pending when the contract was executed. Another was opposition to the district on the part of the landowners which might

cause the act creating the district to be repealed, and this is what did happen. Again, the assessment of benefits might prove to be less than the estimated cost of the improvement. Other reasons might be assigned, attesting the wisdom of such a provision, but it is enough for us that the language used, when given its plain and ordinary signification, means that the contract shall not take effect until the bonds dependent upon the construction contracts are given. It would seem that no useful purpose could be served by diverting this provision from the design sought to be accomplished by it and applying it to a wholly different purpose which had already been accomplished by a preceding clause of the contract. No contracts for the construction of the improvement were executed, nor were engineer's bonds dependent upon them executed. Hence the contract never became effective.

But we do not believe that the case of *Morgan Engineering Co. v. Cache River Drain. Dist., supra,* should be construed according to the majority opinion. It is true we said in that opinion that any law passed by the Legislature which would impair the obligation of the contract of the commissioners with the engineering company would be contrary to our Constitution. It is equally self evident that every decision must be construed with reference to the particular facts of the case, and the previous decisions of the court bearing upon the question at issue. In *Cherry v. Bowman,* 106 Ark. 39, it was held that the provisions of a statute or the Constitution are read into a contract. This doctrine was reiterated in *Thibault v. McHenry,* 119 Ark. 188, and several later cases, and is also a principle of universal application.

The contention of the commissioners was that, under the terms of the repealing act, the Morgan Engineering Company could only have such compensation as the jury might find reasonable. This contention was based upon the theory that the repealing act provided that claimants should be allowed "reasonable compensation for such

services rendered", and that the repealing statute governed. On the other hand, it was claimed by the Morgan Engineering Company that the contract governed and that the company, having done all the preliminary work, it was entitled to recover under its interpretation of the contract. (See p. 443).

The court held that the contract only provided a method of payment. This is far from holding that the commissioners could make a contract for unreasonable fees. So it will be seen that the principal point of dispute between the parties was whether the provisions of the repealing act or the contract should govern. In our opinion, the court correctly held that neither should govern. This was in application of the rule laid down in *Cherry* v. *Bowman, supra,* that there are certain conditions which the law reads into every contract, and in obedience to the Constitution that no law shall be passed impairing the obligation of a contract. (Here it may be stated as a matter of information and not as argument that the transcript in the case of *Morgan Eng. Co.* v. *Cache River Drain. Dist., supra,* shows that the engineers had gone beyond the preliminary survey and had located a large part of the drainage ditch, and it did not appear whether permanent construction of the ditch had been commenced.)

Therefore, the meaning of the last cited case ought to be that, if the construction of the improvement had progressed to a point where the construction contract had been let and work had been done thereunder, the Legislature could not pass an act impairing the obligation thereof. If it holds otherwise, it has been overruled by the cases of *Sain* v. *Bogle,* 122 Ark. 14, and *Bayou Meto Drainage Dist.* v. *Chapline,* 143 Ark. 446. Indeed, we think its principles are upheld by those as well as other later classes. In *Sain* v. *Bogle, supra,* the contract with the engineers was practically the same as in *Morgan Eng. Co.* v. *Cache River Drain. Dist., supra,* as shown by the opinions which were written by the same

judge. The court had established the district. Land owners had attacked the district, and the validity of the district had been upheld. Subsequently the Legislature, as in the instant case, repealed the act creating the district. The court there held that the engineers were only entitled to pay for work done by them for the district, on the same principle that attorneys are allowed fees, in effect holding that they were only entitled to a reasonable compensation.

In *Bayou Meto Drain. Dist.* v. *Chapline,* 143 Ark. 446, the court said: "The commissioners, as public agents under the statute, as we have seen, are not clothed with arbitrary power in the matter of fixing fees of attorneys. They are acting as trustees for the public, and must have an eye to the interests of those whom they serve—the property owners who pay all the expenses incident to the improvement. They must be guided, in entering into the contract of employment with attorneys and fixing their compensation, by what would be a reasonable compensation for services which the attorneys are actually to render. It was not the purpose of the statute to confer upon the commissioners absolute power to contract with the attorneys for fees that would be exorbitant and unreasonable for the services rendered the district. While the presumption is that these public agents will conscientiously discharge their duties, yet it is not impossible, and indeed is entirely within the range of probability, that unreasonable and unconscionable fees may occasionally be agreed upon between the attorneys and commissioners. A statute giving the commissioners absolute power in the premises to thus squander the money of the taxpayers, levied for the purpose of making the improvement, would be contrary to public policy."

In that case the improvement was constructed, and the attorneys were employed by the commissioners. The dispute was whether the parties agreed upon compensation and what it should be. No reason was given, and none is perceived by us, why the salutary and just rule in that

case should be disregarded. It is worthy of note that in that case the chancellor fixed the fee of the attorneys at $6,000, and this court reduced it to $4,000. If the parties could not contract for an unreasonable fee after the services had been performed, for like reason they could not do so in advance of a performance of the services.

If the construction of law announced by the majority should be considered correct, we think its application to the facts is wrong. We think so because they have overlooked a settled and fundamental rule in applying the law to a given state of facts. The rule of law referred to was announced by this court in its early history in *Miller* v. *Jones,* 32 Ark. 337, where it was said that the non-production of evidence clearly within the power of a party creates a strong presumption that, if produced, it would be against him. Prof. Greenleaf, our greatest law writer on evidence, is cited as authority for the holding. The rule has been approved by the Supreme Court of the United States in *Kirby* v. *Tallmadge,* 160 U. S. 379. Indeed, it is a general rule. See case note to Ann. Cas. 1914-A, at p. 909 *et seq.*

The rule prevails in equity as well as at law, that the omission by one party to offer evidence which may be within his reach, to control or explain evidence given by his adversary affecting his interest, is a circumstance of great weight against him. It is generally regarded as conduct in the nature of admission.

In the application of this rule in the instant case, it may be said that the testimony of the engineers is so vague and indefinite as to be intrinsically weak and entitled to but little weight. It is true that several engineers have been introduced who have testified that the amount claimed was reasonable. It is very significant, however, that they did not know what services the engineers had really performed. This is shown by the fact that the engineers themselves did not tell what the work had cost them, and how much of it had been performed by one of the firm. Their answers are evasive. Their own testi-

mony shows that one of the partners was actively engaged in other work. Their testimony shows that they were engaged in various other enterprises at the same time which demanded their supervision and direction. All of their contracts were carried out by employees. In this particular district Morrow was the transitman and cost them $175 per month. The levelman cost $140 per month, including expenses. The rodman was paid $4 per day and expenses. Two dollars per day was the expense of outside labor.

According to the testimony of the engineers, one of them sketched the profile and Morrow drew it. Morrow made the plans and did all the drafting. Each employee wrote his own notes.

According to Bowman, Morrow was still working for him at the time his, Bowman's, evidence was given. Here is the statement of the chancery court in rendering its decree in regard to the engineer's expenses and fees, which we think is borne out by the facts: "As to the engineer's contract: Under the testimony of the engineers themselves, it is improvident and excessive, and very much so. And then when they get away from the contract which Mr. Ford was trying to make seem reasonable and proper, figuring in everything possible to show how much could be made, the most he could make it then was $12,687. And that included $3,600 for the Bowman Engineering Company which they had figured as salary at $300 per month for Mr. Bowman and $200 per month for Mr. Ford himself. They had figured their profits and then put in $3600 more, and $500 for reports; $280 for office rents and lights; $200 for a calculating machine; $187 for rents on their own instruments; all of which I think are incompetent and should not be used in computing the value of their services, and which would reduce the worth of their services rendered to below $8,000 at their own figures. Now, if by an expense of less than $8,000 and by doing the greatest amount of the work under the contract they could make a profit of from ten to twelve

thousand dollars, then the contract is certainly improvi-
dent and excessive and for an unreasonable amount. That
is taking his own testimony for it. And, taking the other
witnesses—this witness who did the work said that they
could make two miles a day in preparing this work, but
say they could make only one mile a day, it wouldn't take
them seven months to do it. Mr. Bowman says, himself,
they only worked 150 days; still they charge for seven
months. I think that $4,000 would be ample pay for the
work done by the Bowman Engineering Company; and
that is what the decree will be.''

According to the testimony of the engineers, Ford
did part of the work, but Morrow did most of it. Morrow
was as competent as Ford. They paid Morrow $175 per
month. No effort is made by the engineers to show why
they should receive so much more than they paid Morrow,
who they admit was competent to do the work, by testi-
fying that they kept him in their employ for that purpose.
It will be noticed that they charged $2,100 for Bowman
for seven months when he had personal charge of other
work. Ford was paid $250 per month for the same time
when a large part of the time he was engaged in other
work. Then again, the firm charged for the same seven
months $3,600. The engineers admit that they were en-
gaged in various other enterprises at the same time.
They do not even show that they were at work on it for
seven months.

It is fairly inferable from their evidence that they
kept a book of accounts and could have told to a dollar
what it cost them to make the survey. If they did not
keep accurate books, their evidence shows they keep a pay
roll. They could have told from their bank checks what
that survey cost them. Their own evidence shows that
Morrow was still in their employ. He had charge of the
work and doubtless knew what his pay roll amounted to
each week and how long he was engaged in the work.

In the Chapline case, above cited, the record shows
that the attorneys were employed while the improvement

was being constructed. It is true the fee was not fixed by the commissioners until after the services had been performed, but the attorneys had been employed in the beginning. But the court held that the commissioners could not contract with the attorneys for more than a reasonable fee, and the reason was that they were trustees for the public.

So, if it is true that where the attorneys have rendered all the services that could be required of them where the improvement was constructed they could only recover reasonable fees for their services, it is difficult to perceive why engineers should recover more because they had contracted to do so before the work was performed.

The engineers had it within their power to show what the survey cost them, and, having failed to do so, the chancellor might rely upon the evidence introduced by appellee, which showed that other engineers had performed similar services for a less amount even than allowed by the chancellor.

With reference to the rule, Judge Story once said, "And certainly naked statements must be entitled to little weight, when the parties hold better evidence behind the scenes." So the failure of the engineers to show the cost of the survey is conduct in the nature of an admission against themselves and warranted the chancellor in finding for appellees in the amount stated in the decree.